## J. S. MARTIN V. D. Q. McCARTY.

### No. 5595.

1. **Settler in Good Faith—Cases Adhered To.**—Burleson v. Durham, 46 Texas, 159; and Snyder v. Nunn, 66 Texas, 260, adhered to.

2. **Same—Statute Construed.**—Under section 5 of Act of April 12, 1883, providing for the acquisition of land by actual settlers in good faith, such settlement in good faith is essential to the validity of a purchase by one in fact upon the land sought to be acquired.

3. **Same—Testimony.**—Testimony merely showing that the applicant settled upon and had possession of the land and had erected valuable improvements thereon, and that he desired to purchase the land and still desires to do so, *held,* insufficient to establish settlement in good faith under the statute under which he sought to purchase.

4. **Land Board—Classification, etc., of Lands.**—Section 3 of chapter 88, Laws of Eighteenth Legislature, approved April 12, 1885, prescribed that "the State Land Board shall, under such regulations as they may prescribe, cause the said land to be classified into agricultural, pasture, and timber land, and ascertain what tracts have permanent water on them or bordering on them, and shall cause a tabulated statement of the land in each county to be made, showing the number of each survey, block, and quantity in each survey. * * * A permanent record thereof shall be made and preserved in the Land Office and a copy of such record relating to a county shall be forwarded to the surveyor of such county or land district in which the land is situated," etc. *Held,* that such classification and tabulated statement were necessary before the lands could be sold under the said act.

5. **Sales of Land by Land Board.**—Section 6 of said chapter 88, Laws of Eighteenth Legislature, provided: "The lands when placed upon the market shall be sold in the county or land district in which it is situated, by such authority and under such system of competition as may be prescribed by said Land Board," etc. *Held,* that the Land Board could not sell lands elsewhere than as thus provided.

6. **Same.**—A sale by the Land Board by a bid received by the surveyor of the county where the land is situated and accepted by the board at the city of Austin was without authority of law and passed no title to the purchaser.

APPEAL from Tom Green. Tried below before Hon. Wm. Kennedy. The opinion states the case.

*Fisher & Townes,* for appellant.—June 2, 1884, J. S. Martin, appellant, began an action of trespass to try title to section 128, block 11, Southern Pacific Railway Company, Tom Green County, claiming to have purchased same as school land under the provisions of Act of April 12, 1883, General Laws of Eighteenth Legislature, 1883, against D. Q. McCarty. McCarty answered, pleading not guilty and setting up title in himself to

said land under an application to purchase as an actual settler under section 5 of said act.   During pendency of suit appellant sequestered the land and appellee reconvened and prayed for damage.

At September Term, 1886, the case was tried without a jury and judgment was rendered that appellant take nothing by his suit, that appellee take nothing by his cross-action, and recover costs.   Each party assigns error and gives bond.   Appellant procured transcript.

The principal questions presented are:

1.   What is the proper construction of the provisions of section 6 of the Act of April 12, 1883, with regard to sale of school lands in the county or district where situated?

2.   If the facts in the case do not show a sale in Tom Green County, within the meaning of said section, then had the Land Board any authority to change the plan of making such sales?

3.   If there are irregularities in appellant's title is appellee in position to avail himself of them to defeat appellant's recovery?

To present them in order above indicated will reverse the order of some of the assignments, and we present the second first.

1.   In the provisions of section 6, Act April 12, 1883, General Laws of Eighteenth Legislature, 1883, that "the land when placed upon the market shall be sold in the county or land district in which it is situated, by such authority and by such system of competition as may be prescribed by the Land Board," the term "shall be sold" does not signify that the sale shall be completed in every respect and legal title passed in such county or district.   It only means that the lands shall be offered there for sale by some local agent authorized to supervise the competition, and that the bidding required by the system of competition provided shall be conducted there.   Its object was to give to parties living contiguous to the land and conversant with it every facility for purchasing. The whole act taken together shows a consummated sale passing the legal title was not intended.

2.   When school land was placed on the market and offered for sale in the county where situated in conformity with law, and a bid complying with the system of competition prescribed by the Land Board was made for the land, the surveyor had no option to reject such bid, but the right of the bidder to the land was guaranteed him by law unless some other higher or better bidder interposed and obtained it.   If his bid was not raised, and he was authorized to buy (that is, had not gotten his full number of sections before), the law "accepted" his bid, and the surveyor could not prevent the accrual of his right by neglect to endorse it on the bid or otherwise signify his acceptance.

3.   If our construction of section 6, as embodied in our first proposition, is wrong, and the court shall hold said provisions to be mandatory and to require a consummated sale in the county where the land lies,

then upon the Land Board prescribing the system of competition which shall be pursued in making sale, and the putting in of a bid by the purchaser in conformity with such system, his right to the land vests immediately, and the sale is consummated by virtue of the statute without any acceptance by the party offering the lands for sale.

This is true notwithstanding the Land Board reserve the right to determine subsequently and in another place whether the bid was put in in good faith and in conformity with law. Upon the finding of such compliance the Land Board recognized his pre-existing right as the highest and best bidder and declared it. If his bid was not in conformity with law it was no bid and he had no rights thereunder.

. 4. Under the sixth section of article above referred to the Land Board is authorized to prescribe just such system of competition for purchase of the school lands as it thinks best. The system provided by it having been fully met and complied with by appellant in his purchase the land became his and he was entitled to recover, at least in absence of proof of right in the party in possession.

The Land Board, by resolution passed October 23, 1883, provided that the lands should be sold by the respective county surveyors in their counties or districts. The system of competition was that an application to purchase should be made by the first bidder in writing and filed and recorded in surveyor's office and with the right to the public to inspect the same, and any party desiring to file other bid in writing more favorable to the State was at liberty to do so, and this bid in turn was subject to be raised in similar manner by any one desiring. All bids were to be forwarded to the Land Board for it to determine which was the best lawful bid and to declare the right. The lands in controversy were applied for by appellant on the 17th of December, 1883, in conformity with said resolution. There was no other bid. Appellant's bid was forwarded and filed with Land Board January 3, 1883, and was awarded to him as the highest and best bidder. He made all payments due and gave his notes for deferred payments.

5. Appellant showed a prima facie title authorizing a recovery against a trespasser.

6. The provisions of section 5 of Act of 1883 applies only to actual settlers at the time designated. It gives privileges to such actual settlers which no other can enjoy. Any party claiming the privileges of such, section must bring himself within its provisions by proof on the trial of the fact of settlement and possession at specified time. Of these facts the ex parte affidavit accompanying the application is not evidence. Especially is it incumbent on him to make such proof when his application has been rejected.

In July, 1883, appellee applied for purchase of the land in controversy under provisions of the actual settler sections of the acts for sale of

school lands. He accompanied this with affidavit of settlement. The Commissioner of the General Land Office and the Land Board rejected his bid. The affidavit accompanying the application was objected to by appellant. There is no other evidence of appellee's status as an actual settler.

*Terrell, Walker & Gregory,* for appellee. —1. Section 6 of the Act of April 12, 1883, provides that the Land Board may prescribe the authority to sell and system of competition, but expressly declares that the land shall be sold in the county or land district in which it is situated, and section 8 fixes the place of sale at the court house door of the county. Taking the act as a whole the provision is clearly mandatory and required a consummated sale in the county where the land was situated. No such sale was made to appellant J. S. Martin, and the sale under which he claimed was void.

J. S. Martin merely applied for the purchase of the land in controversy, and filed that application in Tom Green County. H. B. Tarver, the county surveyor of Tom Green County, stated that "no classification of the school lands in Tom Green County was made under the law of April 12, 1883;" that the land in controversy "was not offered for sale at public outcry in Tom Green County, and that he did not consummate this sale or any other sale in Tom Green County." "Resolution No. 1" of the Land Board prescribes, first, the manner of "placing the land on the market for sale;" and, second, "the mode of purchasing the same." It first provides the mode of placing the land on the market; it then provides the manner in which applications shall be considered, and ends with the declaration "the board reserves the right to refuse to consummate the sale for any reason they may deem sufficient."

Section 7 of the Act of April 12, 1883, only provides "the manner in which the land shall be placed upon the market," and "Resolution No. 1" of the Land Board, above referred to, expressly states that "under the authority of section 7" the mode of placing the land upon the market is prescribed. The making and filing of the application was merely a preliminary step, and the words of the resolution clearly show that there was no sale intended until the bid or bids had been considered and passed upon by the Board. The mere filing of the application with the surveyor of Tom Green County could not possibly have the effect of a sale in that county, and the State could in no way be bound until the Land Board had recognized and accepted the proposition.

Section 8 of the Act of April 12, 1883, supports the view that the sale was required to be consummated in the county where the land was located, for it provides that the sale shall take place "at the court house of the county" in which the land is located, and gives the Land Board no option in the matter of sale as in the matter of advertising. No sale

but merely the preliminary steps having been made in Tom Green County the sale was void as in violation of sections 6 and 8 of the Act of April 12, 1883.

2.    Appellant showed no prima facie title and appellee was not a trespasser.

For the reasons above given appellant showed no prima facie title and certainly not sufficient to recover in an action of trespass to try title. Appellee was an actual settler under section 5 of the law of April 12, 1883, and hence no trespasser.

3.    The court erred in not rendering judgment for defendant, this appellant, on his cross-bill that defendant was an actual settler on said land January 1, 1883, and entitled as such to the title.

McCarty was an actual settler under section 5, Act of April 12, 1883, and as such entitled to protection. He was an actual settler upon the land in controversy on January 1, 1883, and made application in accordance with law. The fact that the Board of Land Commissioners may or may not have rejected his application could cut no figure, as they had no power to consider it.

4.    The Land Board has no power by law to take any action on the application of an actual settler made under section 5 of the Act of April 12, 1883. The Commissioner of the General Land Office alone can reject such claim.

Plaintiff Martin offered to prove by a certified copy of his application to purchase the land in controversy, together with the endorsement thereon, that defendant McCarty's application had been rejected by the Land Board. This testimony was admitted over defendant's objections, whereupon he excepted to the ruling of the court and filed his bill of exceptions.

HOBBY, JUDGE.—This is a suit by the appellant J. S. Martin against the appellee D. Q. McCarty to recover section 128, surveyed by the Southern Pacific Railway Company for the State for the benefit of the common school fund, containing 640 acres of land, and situated in Tom Green County. The plaintiff's petition is in the usual form of an action of trespass to try title and alleges ownership in plaintiff on the 2d day of January, 1884.

It appears from the evidence in this case offered by the plaintiff that the Land Board of the State, under the Act of April 12, 1883, placed the land which is the subject matter of this suit upon the market for sale, and provided that any one desiring to purchase should make a written application addressed to the secretary of said board describing the land by block, number, etc., and with sketch of survey accompanying and price offered. This was to be registered by the surveyor of the county and open to inspection. The surveyor was required to endorse on the

application the bid and date of registry. This was to be done at least ten days before the first Tuesday of the month following. The application was to be forwarded to the board for consideration.

In accordance with the plan adopted by the Land Board for the purchase of the land the plaintiff on December 14, 1883, applied in writing to the surveyor of Tom Green County, who registered the application, and it was forwarded to the board at Austin with the sum of $42.67, the first payment on the land, which was received by the proper authorities. It was shown by the endorsements upon the application of Martin that his bid was No. 220. His obligation for the balance of the unpaid purchase money was executed in the sum of $1237.33, payable to the State. The payment of the sum of $61.86 interest upon the foregoing obligation was also shown. Upon the application of Martin on December 14, 1883, forwarded as above stated to the board at Austin, the land in controversy was awarded to him on the 2d day of January, 1884.

H. B. Tarver testified that he was the surveyor of Tom Green County in 1883 and 1884, and was the agent of the Land Board authorized to sell the school land in that county. That as such agent he did not sell the land in controversy to Martin in that county. He received and registered the application and bid made by Martin in December, 1883, and forwarded it to the board. That there was no classification made and tabulated statement of the school land on file in his office under the law of April 12, 1883, or at any other time, under the resolutions of the Land Board. That the land in controversy was not sold or offered for sale at public outcry in Tom Green County. That there were about 140 applications received by him on the last day they could be filed in his office. He did not offer the land for sale in Tom Green County at public outcry.

The foregoing facts constituted the foundation of appellant's title.

It appears from the testimony that the application of appellee was rejected on April 24, 1884. The questions raised upon this appeal are, whether the appellant, plaintiff in the lower court, has established any title, complete or inchoate, which would authorize a recovery? If not, has the appellee shown by the proof that he has title as an actual settler as specially pleaded by him?

The conclusions of fact and law found by the court were: "That the land in controversy was on the 14th day of December, 1883, public free school land in Tom Green County. That on the 17th day of December, 1883, the appellant Martin made application to purchase under section 7 of the Act of April 12, 1883, which was duly filed and registered in the surveyor's office. That the application was filed in said office on December 21, 1883, and in the office of the secretary of the Land Board on January 3, 1884. That the first payment of $42.67 was made by Martin on the land, and that it was awarded to him by the board on the 2d day of January, 1884. That the land was not sold in Tom Green County."

The conclusion of law found from these facts by the court was that the sale not having been made in Tom Green County, where the land was situated, the sale was void. The judgment was that "the plaintiff take nothing by his suit and the defendant go hence without his costs, and the defendant take nothing by his cross-action and recover costs of plaintiff."

Both parties appealed and assign errors.

The defendant McCarty pleaded specially his title as a purchaser under section 5 of the Act of April 12, 1883, for the benefit of actual settlers in good faith who had settled on or before the first day of January, 1883, under the Act of April 6, 1881. The proof in support of his title consisted of his application as such purchaser to the secretary of the Land Board, dated July 14, 1883, with the statement that the land in controversy had been duly appraised by the surveyor of Tom Green County and by the Commissioners Court of said county approved, and filed in the Land Office, as provided by section 5 of the Act of 1883, showing the appraisement to have been under the Act of 1881, at $1 per acre, accompanied with his affidavit that on the ——— day of March, 1882, he had procured the surveyor to survey the said section 128. That he immediately entered upon and has continuously held possession of and occupied the same, and does now have full and complete possession and occupancy of said section. That he has erected valuable improvements thereon, consisting of a corral and lumber dwelling house, and has made every effort that the law permitted to purchase the same, and desires now to purchase said section under the Act of 1881, as provided by section 5 of the Act of 1883; with the supporting affidavits of two citizens, each stating that he knew of his own personal knowledge that said applicant settled upon said land prior to January 1, 1883, and has continuously held and occupied said land up to the present time and has valuable improvements on said land. There was proof of the payment by appellee McCarty of the sum of $71, being one-thirtieth of the appraised value of the land and interest for one year thereon.

Is is apparent, we think, from the foregoing that appellee McCarty having applied to purchase the land on the 14th day of July, 1883, under section 5 of the Act of April 12, 1883, providing for the acquisition of the same by actual settlers in good faith, would be entitled to a decree under his pleadings had his application been a full compliance with this law, there being no assertion of or claim to any right in appellant Martin prior to December, 1883. But it is nowhere shown by the evidence that appellee McCarty was a settler in good faith as that character and term have been repeatedly described and defined in this State. Burleson v. Durham, 46 Texas, 159.

That this was essential to a recovery by appellee is recognized by his answer, but in this important and vital respect the proof does not support the answer which fully alleges him to be such purchaser. This ques-

tion has been discussed in Snyder v. Nunn, 66 Texas, 258, and cases there cited, and all that we might say with reference to the necessity for establishing this fact would be but a repetition of what was there said.    The evidence of appellee merely shows that he settled upon and had possession of the land and erected valuable improvements·thereon on the ——day of March, 1882; that he desired to purchase the land and still does wish to purchase the same under the Act of 1881, as provided by section 5 of the Act of 1883.

The statute of April 6, 1881, gives a preferred right to purchase to "any persons having improvements upon any of such land prior to the taking effect of this act for the period of six months next after the value thereof is fixed."    Gen. Laws 1881, sec. 2, p. 119.

Section 5 of the Act of April 12, 1883, provides that "any actual settler in good faith upon any land included in this act, who is now and was an actual settler in good faith on the 1st day of January, 1883, shall have the right, etc., provided, that any actual settler in good faith upon lands appraised, etc., in accordance with the provisions of sections 1 and 2 of the Act of 1881, etc., shall be permitted to purchase."    It is not pretended that he has any right by reason of having improvements upon the land prior to April 6, 1881.    If so, it seems, under section 2 of that act, he might have had a preferred right to purchase for six months from the date the Act of 1881 took effect, which was April 6, 1881.    But his right rests primarily upon the fact of being (under the law by virtue of which he asserts title) an actual settler in good faith.    Not having brought himself within the provisions of the statute upon which he relies he has no reason, we think, to complain of the judgment in this case.

The remaining question then is, has the appellant shown such a compliance with the law of 1883 as would authorize a recovery?

As we have stated, there was no compliance with the law requiring a classification of the land and the filing of a tabulated statement in the office of the surveyor of the county where the land was situated.    Nor was there any offer of the land for sale at public outcry at the court house of the county by the person authorized by the board to sell, as provided by section 8 of the act.

In Taylor v. Burke, 66 Texas, 646, it was said that this was a requirement of the law, but the question was not raised in that case and not decided.

In Snyder v. Nunn, before cited, it was held that no right vested in a purchaser as an actual settler where the application was made in the absence of an appraisement.    In Ramsey v. Medlin, 55 Texas, 248, also an appraisement was held to be absolutely necessary to entitle a purchaser to recover.    We think the rule applies with equal reason to the requirement of the law that the classification and tabulated statement shall be made and filed.    The statute prescribes with particularity the facts which

must exist, as said in Snyder v. Nunn, 66 Texas, 260, before the applicant shall be entitled to the land. And though payments upon their respective applications were made by appellant and appellee and were accepted, these have been held as insufficient to warrant the presumption that an appraisement had been made where the evidence was silent upon that point.

In the case under consideration the uncontroverted proof was that no classification of the land and tabulated statement had been made and filed in Tom Green County, under the Act of 1883 or at any other time. So too there was undisputed testimony that the agent authorized by the board to sell did not, as required by section 8 of that act, sell or offer to sell at public outcry this land. That which the law had prescribed as absolutely essential to be done to vest any right to the land in appellant, was not done. And we therefore think he failed to establish his right to recover, and we are of opinion that the judgment is correct as between the parties to this suit.

But we do not wish to be understood as saying that the appellee McCarty is precluded from showing that he is entitled to the land as a settler in good faith under the Act of April 12, 1883. If he can establish this fact he would be entitled to recover.

The judgment as between the parties in this case should be affirmed.

*Affirmed.*

Adopted December 4, 1888.

Motion for rehearing was filed by counsel for appellant. The motion was transferred to Galveston, then to Austin, and was overruled May 28, 1889.

*John C. Townes* and *A. S. Fisher*, for motion.