## THE STATE OF TEXAS v. CARL OPPERMAN.

### No. 7045.

1. **Classification—Land Board.**—In the absence of an allegation in the petition showing the regulations of the Land Board in regard to the classification of lands un-der section 3 of chapter 88, Laws of Eighteenth Legislature, the court on demurrer to the petition could not hold a classification, if received and adopted by the board, as invalid merely because it was made by ·a deputy surveyor who had not been duly qual-ified.

2. **Same.**—A classification of the lands as agricultural, pasture, or timber lands, under said section 3 in said chapter 88, Laws of Eighteenth Legislature, was a pre-requisite to the power of the Land Board to sell.

3. **Land Board.**—The Legislature constituted the Land Board the agents of the State for the sale of the lands to which the Act of the Legislature referred, and the board was only empowered to sell in the manner provided. A sale made in any other manner would be unauthorized and void.

4. **Sale by Land Board.**—A sale of land not made in the county or land district where situated was invalid and passed no title.

5. **Residence as Condition of Purchase.**—In sale by the Land Board of agricultural lands the law devolves the burden upon the purchaser to settle upon the land within six months after the date of the sale. The forfeiture provided in said act for failure to make such settlement, if incurred, would defeat any right under the purchase.

6. **Residence.**—The Land Board could not impose upon the purchaser more or greater burdens than were provided in the law. A stipulation that the settlement should be made within ninety days would not deprive the purchaser of the right of making it within six months.

APPEAL from Hardeman. Tried below before Hon. J. V. Cockrell.

The statement by appellant in full is given. This was an action by the State of Texas against Carl Opperman, brought in the District Court of Hardeman County on August 18, 1888, to cancel a sale made to said Opperman by the State Land Board of 640 acres of the common free school lands situated in Hardeman County, and fully described in appellant's petition, and to forfeit to the State all right, title, and claim said Opperman had to said land by reason of said sale. The cancellation and forfeiture was sought upon the following grounds:

Appellant charged that on July 10, 1886, appellee entered into a contract with appellant, through the State Land Board, for the purchase of 640 acres of common school land situated in Hardeman County, the same being section No. 10, block H, certificate No. $\frac{1}{6}$, granted to Waco & Northwestern Railway Company.

That at the time said sale was made the said land had never been classified into agricultural, pasture, or timber lands. That no tabulated statement of said land showing the block, number of survey, quantity in each survey, name of the company or individual to whom certificate was granted, etc., had ever been made and a permanent record thereof preserved in the General Land Office and a copy of such record forwarded to the surveyor of said county or to the district surveyor. That said land had never at any time been classified and appraised. That said land was not sold in the county or land district in which it is situated. That said land was not sold on the first Tuesday of the month, nor after twenty days notice. That said land was not sold at the court house door of said county at public outcry and to the highest and best bidder. That appellee's bid for said land was never advertised. That said land was and is agricultural, and that by the terms of appellee's contract of purchase and the requirements of the law under which he purchased he obligated himself and was required to actually and in good faith settle upon said lands within six months from the date of his purchase. That appellee wholly failed, neglected, and refused to settle upon said lands within six months from the date of the sale to him. That appellee had never at any time lived upon said land. Prayer for a forfeiture of said land and all money paid

thereon to appellant for the use of the common school fund and for costs of suit.

Appellee answered by general demurrer, special exceptions, and general denial.

The case went to trial on November 23, 1888, on the general demurrer of appellee, which was sustained by the court. The State appeals.

*J. S. Hogg,* Attorney-General, *R. H. Harrison,* Office Assistant, and *R. W. Morgan,* County Attorney, for the State. — 1. Under the Act of April 12, 1883, providing for the sale and lease of common school, university, and asylum lands, agricultural lands could be sold only to actual settlers, and the failure of the purchaser of such lands to actually settle thereon within six months from date of sale to him will work a forfeiture of all money he has paid on such lands and all right, title, and interest he acquired in and to the same by reason of his purchase. Gen. Laws, 1883, pp. 86–8, secs. 6, 8, 13; Taylor v. Burke, 66 Texas, 643.

2. It was necessary to a valid sale and purchase of school land under the Act of April 12, 1883, that the same should have been, previous to the sale, classified and appraised and a tabulated statement of same preserved in the General Land Office, and a copy thereof sent to the surveyor of the county or land district in which the land is situated; and the land must be sold on the first Tuesday in the month, after twenty days' notice, at the court house of the county in which situate, at public outcry to the highest and best bidder. Gen. Laws, 1883, pp. 85–7, secs. 3, 7, 8; Martin v. McCarty, *supra,* 128.

No brief for appellee reached the Reporter.

GAINES, ASSOCIATE JUSTICE.—This was a suit brought by the State to set aside a sale made by the Land Board to appellee of a section of public school land in Hardeman County. A demurrer to the petition was sustained in the court below, and the suit was dismissed. The ruling of the court upon the demurrer is assigned as error.

It is alleged in the petition that the sale was made by the Land Board to the appellee about the 10th of July, 1886, and that at the time of the sale the board had not caused the public school lands of Hardeman County to be classified into agricultural, pasture, and timber lands; that they had not ascertained which tracts had permanent water on them and which not; that they had not caused the tabulated statement required by law to be made or to be returned to and preserved in the General Land Office and a copy thereof to be forwarded to the surveyor of the county or land district in which the land is situated. It is also alleged that the land was not sold at the court house door of the county at public outcry to the highest bidder and after advertisement. It is also averred that the

section in controversy is agricultural land, and that appellee had failed for six months after the sale to settle upon it.

If any of the facts alleged in the petition for avoiding the sale are sufficient to show that it was void, or if valid that the appellee had forfeited his rights, the demurrer should have been overruled.

In Martin v. McCarty, *supra*, page 128, it is held that to make valid a purchase of school land under the Act of April 12, 1883, there must be a classification of the land as required by section 3 of that statute. But it is also alleged that an appraisement had been· made by a pretended deputy surveyor who had never qualified as required by law; that his affidavit was defective; that his appraisement was never approved by the Commissioner of the General Land Office, nor had the Commissioners Court prepared a tabulated statement showing the "number of survey, block, and quantity in each survey, name of the company or individual to whom each certificate was granted, price per acre of each section," etc. If the sale had taken place under the Act ·of April 6, 1881, the . facts alleged in reference to the manner of appraisement would probably have been sufficient to show the invalidity of the sale. See sections 2 and 3 of act cited, Laws of Seventeenth Legislature, page 119. But the sections cited are inconsistent with the Act of April 12, 1883, and are repealed by it. Laws 18th Leg., p. 85, *et seq.*

Section 3 of the latter act provides that "the said State Land Board shall, under such regulations as they may prescribe, cause the said land to be classified into agricultural, pasture, and timber lands, and ascertain which tracts have permanent water on them or bordering on them, and cause a tabulated statement of the lands in each county to be made, showing the number of the survey, block, quantity in each survey, name of the company or individual to whom the certificate was granted, the value of the improvements, and the owner, and such other descriptions and information as may be necessary; and a permanent record thereof shall be made and preserved in the General Land Office. A copy of such record relating to a county shall be forwarded to the surveyor of such county or land district in which the land is situated; but nothing herein shall be construed to require any further classification of such lands as have already been classified, unless the State Land Board shall believe that the same is necessary to ascertain. the true value or class of such land."

The object of the pleader in alleging that a view and appraisement of · the land had been made by an officer not duly qualified, and that other acts had not been done as were required by the statute of April 6, 1881, does not clearly appear from the petition. The date when the appraisement was made was not alleged. If his opinion was that a view and appraisement as required by that act was necessary under the act of April 12, 1883, this was a mistake. If he meant to show that no lawful classification had been made when the latter act was passed, then a different question would

have been presented. We are of opinion, however, that if an appraisement and classification had been made under the law of 1881, and it had been received and acted upon by the board, this was sufficient to call into exercise the authority of the board to make the sale. The Act of 1883 leaves the manner of the classification to the Land Board, and we think they had power under its provisions to adopt any previous classification which classified the lands substantially as the law required, however irregular the method by which it had been made. But without speculating further as to the intention of the pleader, it is sufficient in view of the disposition we shall make of this appeal to say upon this point that in the absence of an allegation showing the regulations of the Land Board in regard to the classification of the lands, we could not hold a classification invalid merely because it was made by a deputy surveyor who had not duly qualified, but following Martin v. McCarty, above cited, we hold that a classification made either before or after the Act of 1883 was a prerequisite to a valid sale. The sale of agricultural, of pasture, and of timber lands was subject to different considerations.

A settlement upon agricultural lands is required to be made within six months after the sale, and no person can purchase more than one section of such lands    Secs. 6 and 8 of Act of 1883. Not so with pasture lands. Timber lands are subject to still other special conditions. Sec. 15. It follows that without a classification showing which was pasture, which timber, and which agricultural lands, it was impossible for the Land Board to comply with the conditions of the law in making the contract of sale, and that a sale without a classification is therefore void.

It may be that by taking the allegations in the petition most strongly against the pleader we should presume that the action of the alleged deputy surveyor was taken after the Act of 1883 went into effect and under the regulations of the Land Board, and that a classification was made in accordance with their rules. But since we think the petition was sufficient upon other grounds we need not further discuss the question.

It is alleged that the land in controversy was not sold in Hardeman County or in the land district to which it was then attached. Section 6 of the Act of April 12, 1883, prescribes that "the lands when placed upon the market shall be sold in the county or in the land district in which it is (they are) situated, by such authority and under such system of competition as may be prescribed by said Land Board." Section 7 provides the manner of sale "until otherwise prescribed by the board." We do not understand that this was intended to affect the provisions of section 6, or to give the board power to abrogate the requirements of that section. The Legislature have constituted the Land Board the agents of the State for the sale of the lands, and have prescribed the manner in which their powers are to be exercised. An agent of an individual who is authorized to sell the land of his principal at public sale at the court

house door of the county in which the land is situated can not sell at another place or at private sale and pass title to the property. No reason suggests itself to our minds why a different rule should be applied to the agents of the State who are empowered to sell by an act of the Legislature. The provisions of section 6 of the statute in question are clearly mandatory and peremptory, and we are of opinion that the Land Board were only empowered to sell the lands in the manner therein prescribed, and that a sale made in any other manner was unauthorized and void. It follows, we think, that the demurrer to the petition should not have been sustained.

It is alleged in the petition that the land in controversy was agricultural land; that at the time of the sale it was agreed by appellee that he would settle upon it in ninety days and continue to reside upon it, and that he failed to become a bona fide settler upon the land within six months. Section 6 of the Act of April 12, 1883, contains the provision "that the agricultural lands shall be sold only to actual settlers," and section 8 has a proviso "that no sale of agricultural land shall be perfected until the proposed purchaser files an affidavit that he intends that the land shall be actually settled within six months, and in case of a failure to settle the same within that time the proposed purchaser shall forfeit the money already paid on the land."

We construe the statute to mean that in case of a sale of agricultural lands, unless an actual settlement be made upon them within six months of the date of the sale the purchaser shall forfeit all rights under the contract. Unless the right to secure the land be lost the purchase money already paid would be but a consideration justly retained by the State and could not be said to be "forfeited." The provision for the forfeiture of the money therefore necessarily implies that the purchaser shall also lose his right to complete the purchase of the land.

If it were true, as alleged in the petition, that appellee agreed to settle the land within ninety days and failed to do so, it would not in our opinion have altered his rights under the contract as fixed by the law. We think the Land Board did not have power to annex extraordinary and onerous conditions upon the purchaser, and that any such condition inserted in the contract was consequently void.

The affirmative facts attending the sale in controversy are not fully stated in the petition. The allegations show rather what was not done than what was done. It follows that we can only indicate in a general way our opinion of the law of the case. We think, however, if the allegations of the petition be true the State is entitled to recover the land.

Therefore, for the error of the court in sustaining a general demurrer to the petition, the judgment is reversed and the cause is remanded.

*Reversed and remanded.*

Delivered May 28, 1889.