## W. B. DOOLEY v. WILHELM MAYWALD.

Delivered March 10, 1899.

1. **State School Land—Sale by Commissioner of Land Office.**

The failure of the county commissioners' report to the Commissioner of the Land Office under the Act of July, 1897, as amended by that of April 6, 1881, to give the general description of State school lands as to soil, water, and timber, as contemplated by section 3, did not make it obligatory upon the Commissioner to reject the report or deprive him of the power to sell the land until after a supplemental report was made, supplying the omission, in view of the duty imposed uopn him by section 4 to have the report corrected before approving it, if in his judgment a defect in the description requires such action. Distinguishing Ramsey v. Medlin, 55 Texas, 246; Snyder v. Nunn, 66 Texas, 255.

2. **Same—Presumption as to Date of Sale.**

It will be presumed in aid of a sale of State school land under the Act of July, 1879, as amended by that of April 6, 1881, that the county surveyor did his duty and did not consider or entertain the application for purchase until after he was notified by the Commissioner of the General Land Office that the report of the commissioners court had been approved by him; and such presumption is not overcome by the mere fact that the application bears date before the approval of the report, the date of the record of the application in the surveyor's office not appearing.

3. **Same—Sale Good as Against Third Parties.**

The fact that the county surveyor, in violation of the statutes, received and entertained an application for the purchase of state school land before the approval by the Land Commissioner of the report of the county commissioners court with reference to the land, is not available to one whose rights did not intervene until the report had been approved, as a defense to an action by the purchaser to recover possession.

4. **Limitation—Possession of Squatter.**

The ten years statute of limitations does not run in favor of a mere squatter against an action of trespass to try title by the owner of the inchoate title in State school land by virtue of a purchase thereof from the State.

APPEAL from Harris. Tried below before Hon. JOHN G. TOD.

*D. F. Rowe* and *William L. Thompson,* for appellant.

*R. M. Hall,* for appellee.

PLEASANTS, ASSOCIATE JUSTICE.—The appellant sued the appellee in trespass to try title to 160 acres of school land situated in Harris County, known as section 42, in block 2, and surveyed for Houston & Texas Central Railway Company by virtue of certificate 125. The plaintiff claimed title under conveyances under one Ed Probert, to whom the land was sold by the Commissioner of the General Land Office, under the Act of July, 1879, as amended by the Act of April 6, 1881. The defendant answered by general demurrer and statutory pleas of limitation of three, five, and ten years. The case was tried by the court without a jury, and judgment was rendered that the plaintiff take nothing by his suit, and that the defendant recover his costs. The court at the request of plaintiff filed his conclusions of fact and of law, which are as follows:

"1. That on the —— day of ——————, the land in controversy in

this suit, viz., 160 acres out of the north part of survey No. 42, block 2, was a part of the public free school lands of the State of Texas.

"2. That on the 13th day of February, 1882, the county surveyor of Harris County filed his report of survey and appraisement of common school lands in Harris County, which classified 42, as follows:

| | No. of Survey. | Block. | No. Acres. | Cert. | No. | Value. | Total. |
|---|---|---|---|---|---|---|---|
| E. Probert...Sec. | 42.... | 2.... | 640.... | H.&T.C.R.R.. | 126... | $1.. | 640 |

"3. Said report was on the 14th day of February, 1882, approved by the Commissioners Court of Harris County, and a copy of said report was entered on the minutes of said court, and with the order approving same was the only classification of said land made or attempted to be made by said court.

"4. That on the 2d day of March, 1882, the county clerk of Harris County made out a certified copy of said report, and the action of the court thereon, which certified copy was received, examined, and approved by the Commissioner of the General Land Office on March 13, 1882.

"5. That the treasurer and surveyor were notified on the 14th day of March, 1892, of the receipt, examination, and approval of said report.

"6. That on the 25th day of February, 1882, eighteen days before the approval by the Commissioner of the General Land Office of the survey of the land, Edward Probert, by Joseph Rosenthal, filed his application to purchase section 42 under the Act of July 8, 1879, and amended by the Act of ————, 1881, and made the first payment, and executed his obligation to the State for the balance of the purchase price.

"7. That the plaintiff, Dooley, has by mesne conveyance acquired whatever right Probert acquired by his attempted purchase.

"8. That the defendant has been in the continuous possession of a part of the 160 acres sued for herein for more than ten years prior to the filing of this suit, claiming the same adversely to the plaintiff and all the world.

"I conclude as a matter of law, that plaintiff has not shown a right to recover, and judgment is acordingly rendered for the defendant."

It does not appear from the court's conclusion whether its judgment is based upon its finding of fact, that the report of the Commissioners Court of Harris County to the Commissisoner of the Land Office failed to classify the land; or upon the conclusions that Probert's application for the purchase of the land was received and entertained by the surveyor before he was notified by the Commissioner of the Land Office that the report of the Commissioners Court was approved; or upon the assumption that ten years adverse possession of the land by the defendant was a bar to the plaintiff's recovery. But upon one or more of these grounds the judgment must rest; and upon none of them can it, in our opinion, be sustained.

As to the first of them, the law seems to have been literally complied with by the county commissioners in making the report required by the third section of the Act of April 6, 1881, save in one particular: it

omitted to give "general description of the land, as to soil, water, and timber." It did not give the price per acre of the land, and that price was the minimum price allowed by law for all lands other than those having fresh water on them, or bordering on fresh water. Section 4 of the act provides, that upon receipt of the report by the Commissioner of the Land Office from the commissioners court, he shall examine the same, and if made in conformity with this act, and if in his opinion the lands therein are properly valued, he shall approve the same, and notify the surveyor of the county of his approval, but if the Commissioner be of the opinion, or has reason to believe, that the land is valued too low, or that the proper description is not given of the soil, timber, or water, or that the land has increased in value since it was appraised, it shall be his duty to require a supplemental report, containing additional information; or he may send an employe of his office to the county in which the land is situated, and such person shall make such report as is required to be made by the commissioners court. Construing these sections, third and fourth, of the statute together, we are of the opinion that section 3 should not be held to be mandatory as to every subject matter which that section declares the report from the commissioners court to the Commissioner of the Land Office shall contain. That there must be an appraisement of the land, and a report by the commissioners court giving a description of the land before the Commissioner of the Land Office could put it upon the market, is no doubt true; but it does not follow from this that if the description given be not as full as that directed to be given by the statute, the Commissioner would be without power to accept and approve the report, and place the land on the market, by notifying the surveyor that the report was accepted and approved. We think the duty imposed upon the Commissioner by section 4 of the act, to have the report corrected before approving it, if in his judgment a defect in the description of the land should require such action, gave him a large discretion in determining whether the report was in compliance with the requirements of the law; and such discretion confided to the Commissioner of the Land Office by the fourth section is repugnant to the idea that the words, "remarks giving general description of soil, water, and timber," found in the third section of the act, are mandatory, and that these omissions from the report made it obligatory upon the Commissioner to reject the report, and denied him the power to sell the land to Probert, or other applicant, until after a supplemental report was made, furnishing him with information sufficient to enable him to correct the report, and such corrected report was forwarded to the county surveyor. The court in its findings, uses the words, "classification of the land." The statute does not seem to require a classification of the lands before they are put upon the market, unless the description directed to be given in the county commissioners' report is to be regarded as a classification. We conclude, then, that the approval of the commissioners' report and its return by the Commissioner of the Land Office to the district surveyor, were acts done within the powers conferred by law

upon the Commissioner, and that the land was legally upon the market when the report, with the approval of the Commissioner, was received by the county surveyor of Harris County.

The sixth finding of the court is, "that on the 28th day of February, 1882, eighteen days before the approval by the Commissioner of the General Land Office of the survey of the land, Edward Probert, by Joseph Rosenthal, filed his application to purchase the land in question." We presume the court means by "the survey of the land," the report of the commissioners of the county court. The Commissioner of the Land Office was required to examine and approve such report before the land could be put upon the market. This finding of the court, we think, is not warranted by the evidence. The only evidence from which the court could have reached this conclusion was the date of the application. This court is of the opinion that that fact, standing alone, is scarcely sufficient to warrant the conclusion that the application was "entertained" by the surveyor before the land was on the market. The statute required that the application when received by the surveyor should be indorsed by him, "recorded,"—giving date, page, and volume of the record, and signing his name thereto; and that he should return the same to the applicant. The application is dated at Houston, and is directed to the county surveyor. The evidence furnished from the records of the General Land Office gives the date of the application, which date is, as found by the lower court, prior to the approval of the Commissioner of the Land Office; but the evidence before us fails to show the date of the record of the application in the office of the county surveyor. The evidence furnished us shows the book and the page of the book in which the surveyor recorded it, but not the date of the record. It may be that the application was left with the surveyor at the time of its date; but unless it was recorded as required by law, such possession could hardly be said to be an "entertainment of the application" by the surveyor. In the absence of evidence to the contrary, we must presume that the officer did his duty, and did not consider or entertain the application until after he was notified by the Commissioner of the General Land Office that the report of the commissioners court had been approved by him. If the application of Probert to purchase the land was entertained by the surveyor before he had been advised by the Commissioner of the Land Office of his approval of the report of the commissioners court, such action by the surveyor was not in acordance with the statute; but in the absence of the rights of a third party intervening between the filing of the application and the receipt by the surveyor of notice from the Land Commissioner of his approval of the report, we are not prepared to hold that such action would render void the sale of the land by the Commissioner to such applicant. The State might doubtless by proper proceedings rescind the sale; and a subsequent applicant, who made his application for the purchase of the land after the surveyor had received notice of the Commissioner's approval of the county commissioners report, might by timely and appropriate judicial proceedings defeat the

first applicant's claim to the land. But the appellee is not in a position to take advantage of such defect, if such there be, in appellant's claim; and the sale not being void, the illegal act of the surveyor should not prevent the appellant from recovering the possession of the premises from the appellee. The cases cited by appellee in support of his contention, that the sections of the statute we have been considering are mandatory, and if not complied with, sales made by the Commissioner are void, are, we think, distinguishable from this. In the case of Ramsey v. Medlin, 55 Texas, 248, there had been no appraisement of the land; and the act under which the land was sold required an appraisement. In the case of Snyder v. Nunn, 66 Texas, 255, Snyder settled on the land in 1881, and made application to the surveyor to purchase it in April, 1882, but could not, because the land had not been appraised, and afterwards, in August, 1883, he applied to the Commissioner of the Land Office to purchase, and filed affidavits with him that he had settled on the land prior to April 6, 1881, and that he made valuable improvements thereon; and he paid one year's interest, and the first installment due upon the land. But the appraisement of the land was never approved, nor does it appear by whom the appraisement was made. In this case there can be no question that an appraisement was made by the proper officer, and that it was approved by the Commissioner of the General Land Office. The application made by Snyder was made under the Act of 1883 which saved the rights of settlers in good faith under the Act of 1881, where the lands had been appraised by the proper surveyor, and when the appraisement was approved by the commissioners court, and it had been filed in the Land Office, but not placed upon the market by the Commissioner. Snyder continued on the land, and in 1884 the appellee settled upon it, and Snyder brought suit to eject him, and the Supreme Court held that he had not acquired an inchoate title to the land, under the facts, and that the lower court rightly sustained exceptions to his petition. In the case of Martin v. McCarty, 74 Texas, 128, the land was sold under the Act of 1885, and that act required that the land board should cause the public lands to be classified into agricultural, pasture, and timber lands, and to ascertain what lands had permanent water on them, and to cause a tabulated statement of the land in each county to be made, giving number of survey, block, and quantity, and that a permanent record thereof should be preserved in the Land Office, and a copy thereof relating to a county should be forwarded to the surveyor of the county or the district in which the land was situated; and the Supreme Court held that such classification and tabulated statement were necessary, before the land could be sold under that act. We see nothing in these cases to support the proposition that the sale of the land in question was without warrant of law; either because the description of the land given in the report of the county commisioners was not a literal compliance with section 3 of the Act of 1881, or because the application for the purchase of the land was received by the surveyor before he had received notice from the Commissioner of the Land Office of his approval

of the report of the county commissioners. The eighth finding of the court is, that the appellee had been in continuous possession of a part of the land sued for for more than ten years prior to the institution of appellant's suit, claiming the same adversely to the plaintiff and to all the world. We are of the opinion that the statute of limitations is not available to the appellee, for the reason that the title, legal and equitable, is still in the State, and the appellant has but an inchoate title, a right under the statute upon compliance with its terms, to acquire the title from the State, to the exclusion of all claimants. The evidence in the case shows the appellee to be but a squatter upon the land; never having made any effort to acquire it from the State; and to permit him to defeat a purchaser from the State from recovering the possession of the premises by plea of the statute of limitations, would in effect be to deprive the State of the power to sell its lands, in the mode and manner prescribed by its laws. Under the evidence, we think the judgment of the court should have been for the plaintiff, and the judgment is therefore reversed, and judgment is here rendered, that the appellant recover of the appellee the land sued for, and his costs in this and the court below incurred.

*Reversed and rendered.*