JAMES WALRAVEN V. FARMERS AND MERCHANTS NATIONAL
BANK ET AL.

No. 1178. Decided March 9, 1903.

**1.—School Land—Validating Act of 1889—Good Faith of Purchaser.**

In the Act of March 12, 1889 (Gen. Laws, p. 106), validating sales of school land by the Land Board under the Act of April 12, 1883 (Gen. Laws, p. 85), to such as in good faith made their purchases and complied with the requirements of the act and the rules of the board, the "good faith" required is such as is defined by the second section of such Act of 1889; that is, in regard to the settlement upon the land, where required by the terms of the Act of 1883, the requirements of the board, or their contracts of purchase. (Pp. 335-340.)

**2.—Same.**

A sale of school land by the Land Board under the Act of April 12, 1883, which was void unler that law because not made in the county where the land was situated, was validated by the Act of March 12, 1889, though evidence was offered showing misrepresentations by the purchaser, in his application, as to the character and class of the land, to establish a want of the "good faith" on his part required by such validating act. (Pp. 335-340.)

**3.—Statutory Construction.**

The previous law, the mischiefs disclosed by decisions on actions had thereunder, the bearing of the preamble and of one section of the statute on the terms used in another, the need of giving some practical effect to the enactment, the preference for a definite rather than a vague and indeterminable meaning, the absence of provisions for practically enforcing the law with the latter construction, and other matters, considered in their bearing on the interpretation of statutory words. (Pp. 335-340.)

**4.—Case Explained.**

The refusal of a writ of error in Collyns v. Cain, 9 Texas Civ. App., 193, explained as not involving an approval of its rulings on the question here decided. (Pp. 340.)

Questions certified from the Court of Civil Appeals for the Third District, in an appeal from Sterling County.

*W. F. Kellis* and *D. D. Wallace,* for appellant.—The court erred in excluding the certified copy of M. Z. Smissen's application to purchase section 4, block 13; the evidence of James Drennan and other witnesses, to show that section No. 4, in block 13, as to soil, timber and water, was incorrect, and that M. Z. Smissen made his application to purchase said section No. 4 at the same time that he made his application to purchase the section in suit, and that the description in each was the same, the object and purpose of said testimony being to show that said Smissen was not a purchaser in good faith. Collyns v. Cain, 9 Texas Civ. App., 193; Flanagan v. Nasworthy, 1 Texas Civ. App., 470.

*J. W. Swarts* and *Hill & Lee,* for appellees.—The court properly excluded the application of Smissen to purchase other and different lands, because the same was irrelevant and immaterial to any issue in this cause, said Smissen not being a party to or interested in this suit; and the title to said lands not being involved in this cause.

The charge given was approved in the case of Collyns v. Cain, 28

S. W. Rep., 548, and Flanagan v. Nasworthy, 1 Texas Civ. App., 470, and we think announced a correct rule for the guidance of the jury. It is difficult to understand how any other rule could be made to apply in such case. He was required by the rules of the land board to give a description of the land in his application. If he believed the description given by him was substantially correct, and he had reasonable grounds for so believing, then how will it be said that he was not acting in good faith?

WILLIAMS, ASSOCIATE JUSTICE.—Questions certified by the Court of Civil Appeals for the Third District, based upon the following facts:

"The Farmers and Merchants National Bank of Texas and William T. Fenton brought this suit in the District Court of Sterling County against James Walraven, to recover a section of land in said county, described in their petition, being State school section .No. 8 in block No. 13, in the name of the S. P. R. R. Co. The action was in the form of trespass to try title. Defendant plead not guilty.

"Plaintiffs claimed title under conveyances originating with one M. Z. Smissen, and the evidence, without contradiction, showed that the plaintiffs had acquired all the title which said Smissen ever owned in the land.

"The evidence with reference to the title of Smissen, as far as material to the questions to be certified, was as follows:

"(1)    Resolution No. 1 of the State Land Board, dated October 23, 1883, as follows:

" 'Resolved by the board, that all common school, university and asylum lands in all the counties of the State are hereby placed upon the market for sale or lease; provided, that for the present all watered sections of land belonging to any of the said funds are hereby reserved from sale or lease, except where the same were occupied by actual settlers, in the legal meaning of that term, prior to January 1, 1883.

" 'Resolved, that under authority of section 7 of chapter 88, General Laws of 1883, the following is prescribed as the mode of placing said lands on the market: The application for the purchase or lease of any of said lands shall be in writing, and addressed to the secretary of the State Land Board, Austin, Texas; said application shall fully and minutely describe each and every section desired to be bought or leased, giving number of section, block and certificate number, and name of the original grantee, with character of soil, grass, timber and water, if any, on each section or piece of land. Said application shall be accompanied with a sketch of the surveys embraced therein, and shall state the price per acre offered for the purchase or lease, and the time for which the land is wanted if leased. The application must be sworn to before some officer authorized to administer oaths, and the lease or sale will be regarded as vacated and null for misrepresentation or false description.

" 'Said application when so prepared shall be registered by the surveyor of the county or district in which the land is located, in a well

bound book to be kept by him for this exclusive purpose, and which shall be at all times open to the inspection of the public free of cost. The surveyor shall indorse on said application the date of registry, with page and volume of register, and shall sign the same officially. All applications must be presented to and registered by the surveyor at least ten days exclusive of the day of registry, before the first Tuesday of the following month. The surveyor shall be authorized to receive from the applicant the following fees: for each section or piece of land described in the application, twenty-five cents, provided the fees in no one application shall exceed one dollar.

" 'Immediately after such registry, the application will be forwarded by the applicant to the Land Board at Austin as hereinbefore prescribed, and the same will be considered by the board on the first Tuesday of the following month; provided no bids will be considered and awards made by the board before the first Tuesday in December next.

" 'All applications so received will be kept by the secretary of the board, subject to examination and inspection, and all persons desiring to purchase or lease are invited by the board to be present in person or by attorney at the times the bids are considered.

" 'The board reserves the right to refuse to consummate the sale or lease for any reason they may deem sufficient, or in case of conflict between applicants, to inquire into the rights of the parties before making the awards.'

"(2)  Application of Smissen October 30, 1883, to purchase the land in controversy, complying in form with the regulations set out above, containing these statements: 'Character of soil: light and gravelly. Grass: curly mesquite. Timber: small mesquite. Water: none;' and offering $2 per acre.

"(3)  Obligation of M. Z. Smissen in the terms required by law for the balance of the purchase money of said section upon his application.

"(4)  Certified copy from the Land Office of the appraisement of the land in suit by H. B. Tarver, surveyor of Tom Green County.

"(5)  It was agreed and proved, that, under Smissen's application to purchase, the first payment to the State in cash, and all interest payments which have become due to date under the Smissen purchase, have been made.

"(6)  The evidence showed that defendant was in possession of the land.

"Plaintiffs introduced evidence tending to show that the description in the foregoing application was substantially correct. One of the witnesses, W. L. Foster, upon this issue, testified as follows: 'I knew the land in suit since 1883. There was no permanent water on it. The timber was small mesquite, a few scattering china, hackberry, walnut and chitim along the creek. The soil was light gravelly, grass curly mesquite.'

"Other witnesses for plaintiff testified in substantially the same manner.

"Defendants introduced evidence tending to show that the land was misdescribed in the application. J. H. McKinney, for defendant, testified: That he had known the land in question since 1881. That a hill of about 150 acres lies in the southwestern portion of the survey; that the soil in the hill is more or less rocky and gravelly; that the rest of the section lies in a valley, and that the land in said valley was a dark, loamy soil. That when he first knew the land, the valley was covered with a thick growth of large mesquite timber. That there was also china, chittim, walnut, willow, hackberry and catclaw growing upon the land. That in the year 1883 he cut 300 or 400 fence posts off the land. That one prong of Sterling creek ran through the land.

"A number of other witnesses testified to substantially the same facts.

"Defendant offered evidence which was excluded, as follows: Application of Smissen of same date and form as that before mentioned in which he sought to purchase another section with same representation as to soil, grass and timber as that given in the other application, except as to water the application contained the statement, 'None permanent.'

"And defendant offered to prove by the plaintiff, James Drennan, and a number of other witnesses, that the description of section 4, block 13, as to the soil, timber and water is incorrect; that at least 400 acres of said section is rich valley land, free from gravel, deep dark soil and had a growth of large mesquite timber on same in 1883, and that there was water in natural holes from three to nine months in the year, and stated that the object and purpose of this testimony was to show Smissen's good faith and intentions in making his application to purchase the land in suit, to which evidence the plaintiff objected for the reason that the same was immaterial and irrelevant, and the court having heard said objection sustained same, and rules said evidence out, to which ruling and action of the court defendant excepted, etc.

"The court submitted only one issue to the jury, as follows:

" 'You are instructed that if you find from the evidence that M. Z. Smissen acted in good faith in purchasing the land in controversy from the State Land Board, and that said Smissen did in good faith comply with the rules of the Land Board, then you will find a verdict in favor of plaintiffs for the land sued for, and in this connection you are instructed that if the said Smissen, at the time he made his application to purchase said land, believed the description of said land contained in said application was substantially correct, and that he had reasonable grounds for so believing, then said description would be considered as made in good faith.

" 'You are further instructed that if you do not find that said purchase was made in good faith, and that said Smissen in good faith complied with the rules of the Land Board, then you will return a verdict in favor of defendant.'

"Verdict and judgment was for plaintiffs, from which the defendant Walraven appealed, assigning among other errors the exclusion of the evidence offered, as shown by the foregoing bill of exceptions.

"Appellees contended that under the evidence they were entitled to recover the land, and that their title could not be made to depend upon the good faith of the original purchaser; and further, that if the good faith of the original purchaser was a proper issue in the case, that the evidence offered was not admissible on that issue.

"We conclude, that, the plaintiffs having failed to show that the land was sold in the county where it was situated, the title claimed by Smissen was void under the rule announced in Martin v. McCarty, 74 Texas, 128, and State v. Opperman, 74 Texas, 136; and as the plaintiff's title then depended upon the validating acts of 1889 and 1891, following the cases of Flanagan v. Nasworthy, 1 Texas Civ. App., 470, and Collyns v. Cain, 9 Texas Civ. App., 193, the good faith of the applicant Smissen was a material issue.

"We also held, that, the evidence having been introduced tending to show that Smissen had misdescribed the land in suit, the defendant was entitled to show that he had also misdescribed a neighboring section of land, in an application filed on the same day that he applied to purchase the land in suit, as a circumstance to show whether he acted in good faith in the purchase of the land in controversy, and we reversed the case because of the exclusion of the evidence set out in the defendant's bill of exception number 3.

"Appellees, who were plaintiffs below, have filed a motion for rehearing, which is now pending, and upon the above statement and findings of fact the Court of Civil Appeals for the Third Supreme Judicial District of Texas certifies to the Supreme Court of Texas the following questions:

"1. Was the title of appellees dependent upon the good faith of M. Z. Smissen in making his purchase of the land in controversy?

"2. If the good faith of said Smissen in making his purchase of the land in question was a material issue, was the evidence offered by appellant,. as shown in said bill of exception number 3, admissible on that issue?"

1. No facts are stated in the certificate to make the title of appellees superior to or different from that of Smissen. To the same extent that Smissen's title was dependent on his good faith, that of appellees is dependent upon it. York v. McNutt, 16 Texas, 13; National Oil and Pipe Line Co. v. Teel, 68 S. W. Rep., 979, 95 Texas, 586. If Smissen's lack of good faith, as that phrase is interpreted by the Court of Civil Appeals, took his purchase out of the operation of the validating statute, and if it therefore continued to be null and void, the title which appellees derived from him must be regarded as equally so. Therefore, in order to determine the first question submitted, we must inquire whether or not representations such as are here in question, if fraudulently made in a purchase under the Act of 1883, deprived the purchaser of the benefit of the validating Act of 1889. If so, appellee's title depends upon the good faith of Smissen in making such representations; if not, their title does not so depend. The decision of this question by the

Court of Civil Appeals is sustained by the cases cited in the certificate, in the last of which a writ of error was refused by this court. We shall refer to this later. Those decisions are, we think, based upon an erroneous construction of the Act of 1889. In order to construe this statute we must bring into view the Act of 1883, the action of the Land Board under it, and the decisions of this court declaring void certain sales made by the board in disregard of the requirements of that act. Before lands were put upon the market, the Act of 1883 required a classification of them into agricultural, grazing and timber lands, and the forwarding to the surveyors of the counties or districts in which lands were situated a prescribed tabulated statement. Sales were required to be made in the counties or districts in which the lands were situated. Sales made without previous classification and tabulated statement were held void, as were those made in Austin instead of the county or district where the land lay. Martin v. McCarty, 74 Texas, 128; State v. Opperman, 74 Texas, 136. The act contained differing provisions concerning sales of different classes of lands. Agricultural lands could only be sold to actual settlers or those intending to become such, and the statute provided that "no sale of agricultural land shall become perfected until the proposed purchaser files an affidavit that he intends that the land shall be actually settled within six months; and in case of failure to settle the same within that time, the proposed purchaser shall forfeit the money already paid on the land." A purchase of agricultural lands was thus avoided by force of the act itself upon the failure to settle. Chancey v. State, 84 Texas, 529. Actual settlement was not required in the purchase of grazing land. All the purchaser was required to do, after the award, was to pay the prescribed part of the purchase money, execute the prescribed obligation and meet the payments required by the latter as they fell due. Smissen's purchase was of this character. Still different provisions were made as to timber lands. As to all, there were limitations as to the amount of land which might be bought by one person, and this amount depended upon the class of the land purchased. To prevent frauds, the statute provided: "Every attempt to evade the limitation of this act as to the amount or class of land one may purchase, by any device whatever, shall be deemed fraudulent, and the fraud may be shown and the purchase canceled by the State within one year from the date of sale." It thus appears, that, when the Land Board complied with the provisions of the statute so that its acts or omissions would not affect a sale, violation by the purchaser of the provisions as to actual settlement, ipso facto, rendered his purchase void; and violation or evasion of the limitation as to the amount or class of the land rendered the purchase voidable by the State. Nobles v. Cattle Co., 69 Texas, 436. The Land Board by its regulations made additional requirements as to actual settlement, within a shorter time and for a longer period than those specified in the statute, and these regulations were held void so far as they prescribed additional conditions. State v. Opperman, supra; Chancey v. State, supra.

After the decisions of this court, cited in 74 Texas, were rendered, the validating act of 1889 was passed. After reciting, in a preamble, that contracts had been made by the Land Board for sales to persons who had bought in good faith believing that their contracts were valid and binding; that it had been found that such contracts had been made by the board without a compliance with the requirements of the law, whereby the contracts were rendered invalid, and the purchasers had failed to acquire any right, and that this result was inequitable and unjust to the persons so acting in good faith, who have complied with their contracts, the statute by the first section provided in substance: That all contracts made by the board for such sales to any person "who has in good faith made such purchase and in good faith has complied with the requirements of said act (of 1883), the rules and regulations of the Land Board, and the terms and conditions of his said contract, shall be and are hereby made valid and binding upon the State in the same manner as if the said Land Board had in all particulars complied with the requirements of the said law."

The second section excludes from the benefits of the act persons who have failed to make "bona fide" settlement upon the land, where, by the terms of their contracts or the requirements of the board, settlement was required; and also persons who made purchases under agreements or promises that actual settlement should be made, unless they had made such actual settlement "in good faith" as required.

The third section validated the titles of assignees of original purchasers, when such assignees were, on the 1st day of January, 1889, actual "bona fide" settlers and were still residing on the land, in cases where the original purchasers failed to comply with the law or the requirements of the Land Board, and where the annual rental had been paid.

The first section does not embrace contracts of persons who did not purchase in good faith and in good faith comply, etc., and the objection urged to Smissen's title is that he committed a fraud by misrepresenting the qualities of the land, and hence did not act in good faith. The question thus raised is whether or not this is what the Legislature meant by the language used. Unless we can find in the statute itself the means of determining the kind of good faith, the absence of which would take a purchase out of the validating clause, a most comprehensive investigation of the facts of any sale will be necessary in order to determine, by a very indefinite standard, whether such sale has been validated or is still void. The sale in question was originally void, for one reason at least, that it was not made in the county where the land lay, but at Austin. The purpose of the Legislature was to remedy the nullifying effects of such a failure of the Land Board to sell as prescribed by the statute, and this it did by making the sales as valid as if the board had observed the law, and not more so, where the contracts and the action of the purchasers had been such as is specified. If no guide is furnished

to determine the character of the good faith meant but the general meaning of the phrase, all sales which were originally void only because of the noncompliance by the board with the law are left forever open to the objection that they are still void, notwithstanding the validating act, because the purchaser, in some connection, acted in bad faith. The expression "good faith" is used in the law to qualify many different kinds of actions. Thus a purchaser without notice of a defect or a fraud is called a purchaser in good faith. One who acts honestly and not fraudulently is said to act in good faith. There are purchasers in good faith, settlers in good faith, possessors in good faith. If it is true that one who bought under the Act of 1883 must, in order to get the benefit of the validating act, show that he acted in good faith, in the sense that he made no misrepresentation, by the same reasoning he may be required to show good faith in any other sense, when his good faith could in any way have affected the sale. If a certain intent characterized his conduct, his title is still void, while a different intent would make it valid. We should naturally expect something in a validating act, intended to remove an "unsettled condition" of land titles, to prevent the uncertainty and confusion which would be left by the use of such indefinite language, and we think it is found in the second section. That section should, in our opinion, be taken as defining the sales which were not to be embraced in the validating clause, and the persons there mentioned as the ones who the Legislature thought, had not "in good faith made such purchase and in good faith complied with the requirements of the act, the rules of the board and the contract." The second section was useless unless this was its purpose, for the sales mentioned in it would not have come within the validation declared in the first section if it stood alone. As the Act of 1883 made failure to settle as required by it avoid a sale, and as section 1 of the Act of 1889 only validated against the results of the noncompliance of the board with other provisions of the former statute, it was unnecessary for the latter act to exclude from its operation sales which were already made void by the failure of the purchaser to settle. But as the Land Board had in some contracts made additional requirements as to settlement, noncompliance with which was not by the Act of 1883 made to render the sale void, it was necessary for the validating act, in order to prevent a confirmation of such contracts, to exclude the purchasers under them from its benefits, on the ground that they had not settled "in good faith." There is nothing in the whole statute to indicate a purpose to deprive of its benefits any sale in which actual settlement in good faith was not required, unless the language quoted from the first section has that effect; and we think the second section fairly defines what is meant by that language. Under this construction, no sale is validated further than to cure the infirmity specified in the act, viz., the failure of the Land Board to follow the Act of 1883, in making sales; and a sale which, before the passage of the Act of 1889, was void or voidable for other reasons, remained so, unless it fell within the provisions of the third section.

The sale in question, if induced by misrepresentations of Smissen, may have been voidable, but was not for that reason void; if voidable, the vice which made it so was not cured by the validating act; but because it was voidable, it does not follow that the Legislature intended to withhold from it the relief afforded by curing other defects arising from the fault of the agents of the State. It is true that the rules of the Land Board required a minute description of the land by the purchaser, in his application, and provided that a sale would be regarded as vacated and null for misrepresentation or false description, and there is force in the view that the mention, in section 1 of the validating act, of contracts made in good faith and in compliance with the rules and regulations, meant that there must have been compliance in good faith with this rule. But, in order to give this statute any appreciable effect, a construction of the language of its first section, in harmony with its general scope and purpose, is necessary. A literal application of the language of that section would destroy the force of the statute; for, by the latter, compliance with both the Act of 1883 and the rules and regulations of the Land Board was demanded. If this exacted compliance with all the provisions of the act and of the regulations, no sale, void because of conflict between the two, would be embraced. The only occasion for the statute, the avowed purpose of its enactment, was to remove any invalidity in sales arising from a departure by the Land Board in its regulations from the rules of the statute. A purchaser who bought at Austin did not comply with the rule of the statute that he must purchase in the county or district where the land was situated. In order to heal defects which had arisen from this conflict, noncompliance with those requirements wherein the conflict existed must, of necessity, be disregarded. It thus results that, in order to make this statute operative, it must be construed as not requiring compliance with all of the provisions of the statute and, at the same time, with all of the rules of the Land Board; and the question must then be answered, what ones must have been complied with. The statute would be most incomplete. if it afforded no light to aid in determining the question but the language of the first section. With the aid of the second section a somewhat definite construction, which we have stated, may be sustained. The third section of the act also indicates to some extent that the class of contracts which were not to be embraced were those where actual settlement had been required and had not taken place, for certain cases of actual settlement were included which would otherwise have been excluded. The further validating act of 1891 carries out the same idea. The validating act of 1889 was passed at a time when the requirement of actual settlement in good faith, with rigid rules designed to secure it, was the most conspicuous feature of the laws regulating sales of these lands. The Act of 1887 was in force, with its many provisions embodying this policy, and important amendments were engrafted upon it at the same session which enacted the curative statute. This renders it probable that the condition of good faith required to bring a purchaser within

the healing provision meant good. faith in making and complying with a contract which had required actual settlement. This gives the language a definite meaning and connection, and applies a test which would enable officers intrusted with the execution of these. laws to determine, with some degree of accuracy, the validity or invalidity of sales which had been made. The statute, being a curative and highly beneficial one, should be liberally construed to effect the purpose intended. Thus construed, it removes the vice of nullity arising from the fault of the Land Board, alone, from all sales except those in which there had not been good faith in the purchase and settlement of lands required to be actually settled, and leaves others to stand as if they had been made in accordance with the Act of 1883. Neither in the validating act nor any subsequent one has any provision been made for determining any such question as would have existed if purchases made under the Act of 1883 in bad faith, as understood by appellant, were still void. Provisions have been made empowering the Commissioner to forfeit for nonsettlement, nonpayment of interest, etc. If such sales are void the lands belong to the State and have been always subject to sale and lease. . Under the construction contended for, how could the Commissioner ever determine whether to sell or not? Under the construction which we adopt, a visible fact, nonoccupancy, would guide, and the officer could act under the powers given him in the several laws regulating sales. The history of these sales made under the Act of 1883 is that they have stood unquestioned by that officer, and purchasers and their assignees have continued, many of them for twenty years, to make payments to the State in compliance with their contracts. In this case the holders of such a title are put upon proof of the correctness of representations made by the original purchaser many years after the purchase and after the passage of the validating act, and the same thing may be done in any such case for years to come, if the statute, expressly intended to settle titles, permits it. The consequences must at once excite a careful inquiry into the correctness of a construction from which they would flow, and such construction should clearly appear to be necessary before it is adopted.

The point under discussion was undoubtedly involved in the case of Collyns v. Cain, supra, and was decided by the Court of Civil Appeals. The application for writ of error presented to this court did not question the construction put upon the statute. On the contrary, the complaint was that the evidence introduced, on the question of fraud vel non, was insufficient to prove fraud and established good faith. One of the assignments, that the plaintiff in that case ought to have recovered upon his prior possession against a trespasser, may have incidentally involved the question, but it was not in the mind of the draughtsmen of the application or of the court, so we can not regard that case as a precedent which we must follow.

We answer that appellee's title in this action does not depend upon the good faith of Smissen in making his application to purchase.

The second question becomes immaterial.