## Speer, Banking Commissioner of Kentucky v. Dossey, et al.

(Decided November 16, 1917.)

### Appeal from Franklin Circuit Court.

1. Banks and Banking—Banking Commissioner—Powers and Duties—Discretion.—The banking commissioner, under subsection 20 of section 165a, Kentucky Statutes, may exercise a discretion in passing upon the financial standing and moral character of the incorporators of a proposed bank, and in the performance of such duties shall require such incorporators to furnish satisfactory proof that each is worth over and above his exemptions and liabilities at least double the amount of the par value of his stock subscription; and the commissioner shall also inform himself that the incorporators in good faith seek to establish a bona fide banking or trust business, but beyond this the duties of the banking commissioner are merely ministerial.

2. Banks and Banking—Powers of Banking Commissioner.—It is not within the province of the banking commissioner to determine whether a proposed bank is entering a field which will prove profitable, or whether the community in which it is proposed to be established is large enough to maintain two banks, or that the establishment of a new bank may prove detrimental to the one already established.

3. Banks and Banking—Incorporation of Banks—Discretion of Banking Commissioner—Mandamus.—When the incorporators of a proposed bank present properly signed and acknowledged articles of incorporation which comply with the requirements of the statute and have established their solvency and good moral character and have presented satisfactory proof of their good faith intention to establish and carry on a bona fide banking institution, the banking commissioner has no discretion to refuse to approve the articles of incorporation, and if he decline to perform the ministerial duty imposed upon him under such circumstances, mandamus will lie to comped proper action.

CHARLES H. MORRIS, Attorney General, and OVERTON S. HOGAN, Assistant Attorney General, for appellant.

ED C. O'REAR for appellees.

Opinion of the Court by Judge Sampson—Affirming.

The appellees, Dossey and several others, undertook the organization of a state bank, under the laws of this Commonwealth, to be located at Fountain Run, Monroe county, Kentucky. The articles of incorporation were duly prepared, signed and acknowledged by the incorporators and presented to George G. Speer, Banking Commissioner of the Commonwealth, for his approval, as required by subsection 20 of section 165a, Kentucky Statutes. The Banking Commissioner refused to approve the articles of incorporation, and this action in mandamus was instituted by the incorporators in the Franklin circuit court to require Speer, as Banking Commissioner, to approve the articles. By the allegations of the petition it is made to appear that the plaintiffs (twenty-one in number) have complied with the requirements of the statute, regulating the organization and establishment of banks and trust companies in this Commonwealth, and that the articles of incorporation conform to the statutes in such cases made and provided, and that such articles have been duly signed and acknowledged by each of the incorporators, and that each of the said incorporators is of good moral character and is worth double the amount of his subscription to stock, exclusive of his exemptions and liabilities, and they in good faith intended the establishment of a *bona fide* banking business.

By the answer the Banking Commissioner admits that the incorporators have properly complied with the statutes in the preparation and execution of the articles of incorporation, and that each of said incorporators is of good moral character and in good standing financially and worth above his exemptions and liabilities double the amount of his subscription to stock, but he denies that the incorporators are in good faith in the establishment of the bank, but asserts that they are incorporating the bank as a retaliatory measure against certain other citizens in Fountain Run community, who are preparing to engage in a flour milling business in opposition to a mill already there. The statute requiring the approval of the articles of incorporation by the Banking Commissioner reads, in part, as follows:

''Upon the presentation of the said articles of said incorporation to the Banking Commissioner for approval, said commissioner shall carefully *examine same,* and shall make such *inquiry* and investigation as to the *financial*

*standing* and moral character of each of the incorporators as he may deem necessary, and shall require said incorporators to *furnish satisfactory proof* that each is *worth over and above all exemptions* and *liabilities* at *least double the amount of the par value of his stock subscription.* He shall inform himself that the incorporators are *seeking to establish a bona fide bank* or trust business, and are *acting in good faith,* and upon his conclusions, he shall approve or refuse to approve the articles of incorporation.''

The commissioner, in refusing to approve the articles of incorporation, wrote one of the incorporators, at Fountain Run, a letter, dated May 11, 1917, in which he stated, among other things, that he had conducted an investigation "of the country and conditions surrounding your little town, with a view of ascertaining whether there is a demand for a second bank at this place.

''I have tried to ascertain if another bank was chartered at this place, if both of them could secure enough business to justify the establishment of a second bank.'' And the letter further states that the commissioner has had one of his examiners investigate the bank already established and that such examiner has reported to the commissioner ''that he did not believe a second bank could succeed, and, if it did succeed, it would destroy the one already located there.'' And further ''that the establishment of another bank would either ruin the bank already there or the one established would fail in its efforts to build up a good, strong financial institution.'' The letter adds, however, that the approval of the articles is refused ''for the further reason that we do not believe there is sufficient business in this community to justify the establishment of a second bank.''

Under the statute above quoted, it is the duty of the incorporators of a bank to present the proposed articles of incorporation to the Banking Commissioner for his approval before filing and recording the same in the office of the county court clerk and of the Secretary of State. The statute then makes it the duty of the Banking Commissioner to examine the articles of incorporation and to make such inquiry and investigation as to the financial standing and moral character of each of the incorporators as he may deem necessary, and he shall require such incorporators to furnish satisfactory proof that each is worth over and above his exemptions and liabilities at least double the amount of the par value of

his stock subscription; and the commissioner shall also inform himself that the incorporators are seeking to establish a *bona fide* banking or trust business, and are acting in good faith. In this instance, the proposed incorporators brought the articles to the office of the commissioner in Frankfort, Kentucky, and presented them to the commissioner with full information regarding their purpose; the moral and financial standing of the incorporators and such other information as the commissioner sought to obtain. Thereafter the commissioner sent two of his bank examiners into the village of Fountain Run to make a survey of the local conditions and to report to him. In his letter, declining to approve the articles of incorporation, the Banking Commissioner makes it clear that he is withholding his approval of the articles because, in his opinion, the establishment of the new bank would be to the detriment of the one already there; and that "both of them could not secure enough business to justify the establishment of a second bank," and that he "did not believe a second bank could succeed," and "if it did succeed, it would destroy the one already located there," and for the further reason "We do not believe there is sufficient business in this community to justify the establishment of a second bank." Neither of the reasons assigned by the Banking Commissioner for withholding his approval of the articles come within the discretion allowed him in subsection 20 of section 165a, Kentucky Statutes. He has and may exercise a discretion concerning the composition of the articles of incorporation, and as to the financial standing and moral character of the incorporators, and also as to the solvency of the incorporators and their financial worth over and above their exemptions and liabilities; and likewise may he exercise a discretion as to the good faith and *bona fide* intention of the incorporators to establish and carry on a regular banking business, but beyond this, his duties are ministerial. In this case, the commissioner admits the incorporators have brought themselves within the requirements of the statute in all particulars except with reference to their good faith or *bona fide* intention to conduct a regular banking business. With respect to their lack of good faith or *bona fide* intention the commissioner relied upon certain evidence in the record showing that some of the incorporators were interested in a flour mill in the village of Fountain Run, and that persons interested in the old bank there were proposing to promote another milling company in opposition to

the one already established, and that the organization of this bank was proposed as a retaliatory measure, and not in good faith. The good faith contemplated by the statute has reference only to a fixed purpose and intention on the part of the incorporators to engage in a regular banking business as distinguished from a stock jobbing or advertising scheme in the interest of some auxiliary enterprise; the words "good faith" in the sense employed in this statute means a settled purpose or determination to inaugurate and carry on a legitimate banking or trust business in the usual course, as contradistinguished from the flotation of a spurious or false representation of such an institution. The incorporators of a bank are acting in good faith, within the meaning of this statute, when they form a fixed purpose not only to organize, but to institute and carry on a banking business in the mode prescribed by law, without reference to its interference with other established banks, or its opportunity for profit from the undertaking. The *bona fide* intention relates to the banking institution as an entity. The bank must be a bona fide institution, not a phantom, and the good faith requirement has reference only to the honest purpose of the incorporators to establish and carry on a real bank, according to law, without regard to secondary results. That the new bank may work a hardship upon the one already established in the same community does not affect the good faith or *bona fide* intention, even though this may be well known to the incorporators of the new bank. The incorporators may even entertain ulterior motives, such as the supplanting of another institution, by application of progressive business methods, yet such motives will not justify the Banking Commissioner in withholding his approval of the articles of incorporation. It is not within the province of the Banking Commissioner to ascertain whether two banking institutions will prosper in a given town, nor whether the establishment of a new bank will prove detrimental to the one already there, but his discretion must be exercised only within the limits prescribed by the statute. Within these limits the Banking Commissioner has a discretion, but once the facts are ascertained, showing that the incorporators to have placed themselves within the requirement of the law, the subsequent duties of the commissioner are purely ministerial, and he may not withhold his approval for any reason outside the pale of discretion allowed by the statute creating his office. If he refuses a court of equity will

compel proper action. The statute does not contemplate the suppression of competing banks by the withholding of the approval of the commissioner to articles of incorporation merely upon the ground that the business may not prove profitable, or may be a detriment to a bank already established in a given community. It is the duty, however, of the Banking Commissioner to look to the moral standing and financial worth of the incorporators and their good faith and intention to carry on a regular legitimate banking or trust business. Their purpose, however, to enter into competition with an established banking institution in the same community, or even to destroy its business by fair competitive means, would not amount to want of good faith or *bona fide* intention upon the part of the incorporators to establish and carry on a banking business as contemplated by the statute. It has been and is the policy of this state to encourage the establishment of banks and other corporations even in competition to one another because out of a wholesome rivalry the general public derives a benefit. If the construction the commissioner places upon this statute can be maintained every established banking institution in the Commonwealth could defeat the organization of a second bank in its community for similar reasons, because it might well be argued in every such case that the establishment of a new institution would take away part of the business of the old bank and to that extent weaken it and reduce the profits arising from its established business. It may be said that one bank in any town or city is sufficient, because the whole population can there be served. This would likewise apply to every mercantile establishment as well as mills and other industrials, because a monopoly is always profitable to the holder of the exclusive privilege.

Under the facts in this case, the refusal of the Banking Commissioner to approve the charter of the Farmers Bank of Fountain Run appear to have been without warrant of law. The lower court properly granted the mandatory order, requiring the commissioner forthwith to approve, in writing over his official signature, the articles of incorporation of said banking institution.

Judgment affirmed.