CLARENCE F. KRONE, and NORMAN BRICE, doing business as KRONE-BRICE COMPANY, Appellants, v. THE SNAPOUT FORMS CO., a Corporation, Respondent, No. 41522—230 S. W. (2d) 865.

Division One, June 13, 1950.

*Francis R. Stout* and *Richard M. Stout* for appellants.

*William H. Armstrong* and *Henry C. M. Lamkin* for respondent; *Cobbs, Logan, Armstrong, Teasdale & Roos, of counsel.*

CONKLING, J.—Clarence F. Krone and Norman Brice, partners, plaintiffs below and appellants here, sued The Snapout Forms Company, defendant below and respondent here, for libel and prayed for $25,000 actual and $50,000 punitive damages. The verdict of the jury was for the defendant. From the adverse judgment plaintiffs appealed. We refer to the parties as plaintiffs and defendant.

Plaintiffs were engaged in selling printed business forms in St. Louis and vicinity. Defendant was a manufacturer in Ohio of printed business forms. The petition alleged that plaintiffs conducted "an independent jobbing business"; that defendant was the agent of plaintiffs to manufacture the business forms which plaintiffs sold; that defendant sent to certain of plaintiffs' customers in St. Louis a letter stating therein that in their relationship with defendant, plaintiffs had committed a "breach of good faith"; and that defendant had discontinued plaintiffs' alleged relationship as dealer because plaintiffs had sold some business forms not manufactured by defendant. As a defense, the answer affirmatively alleged that the statements in the letters "were true due to the plaintiffs' conduct" in selling forms not manufactured by defendant.

824

The alleged libelous letter was dated September 18, 1939, and was as follows: ''For the past five years we have been manufacturing forms for you which we have sold through our dealers, Krone-Brice Company, in St. Louis, Missouri, which business we have always valued very highly and take this opportunity in thanking you for placing it with us. You will note that the last forms which you have received through Krone-Brice Company have not been manufactured by us. It is very unfortunate that these dealers of ours committed this breach of good faith without us having any knowledge of the same and we are quite sure that if you were placed in the like position as we are and you had a distributor or dealer which committed an act of this kind, there would be nothing else left for you to do but discontinue such an outlet for your product immediately, which we, of course, were forced to do. Having had no knowledge that these people would commit an act of this kind, it was more or less a shock to us and we, of couse, were left without any representative in St. Louis. We would, therefore, appreciate it if you would ask for a quotation direct from us, calling us long distance, collect, whenever ncessary and we will try to do the best we can to service you in a manner, and give you a price, which we are sure will make you very happy to continue to deal with us direct. As soon as we have located another representative in St. Louis, we will advise you immediately and we are sure such representation will give you the same or better service (than) you are receiving now. The writer shall be very pleased to hear from you as to whether we will be given an opportunity to quote direct until we have a representative in your area whom we have confidence will give us good representation. (Signed) Yours very truly, The Snapout Forms Company, Fred Rutz, Director of Sales.''

██ Plaintiffs first contend that the court erred in giving defendant's instruction 9, which was as follows: ''The Court instructs the jury that, although one may publish of another defamatory and malicious matter, yet the truth of the matter published forms a complete defense to any action for damage for such publication; and in this case, even if the jury should believe from the evidence that Defendant published of the Plaintiffs any or all of the matters charged as libelous, yet if they further find from the evidence that the matters so published were true as published, then the defense has been made complete, and in that case it is immaterial whether the Defendant Snapout Forms Co., in writing and publishing the letter, was or was not actuated by malice against Plaintiffs, and you must find for the Defendants.'' Plaintiffs' only contention is that that instruction is without factual support ''because there was no evidence or reasonable inference of truth in the record.''

As a basis for their position as to instruction 9, it is insisted by plaintiffs that, ''Truth in this case could only have been shown by

proving an exclusive agency contract." While defendant's answer also alleged that it granted plaintiffs the exclusive right to sell Snapout Forms in the St. Louis area and that plaintiffs agreed to refrain from selling similar and competitive business forms put out by other manufacturers, we conclude that the propriety of instruction 9 does not depend upon the then relationship of plaintiffs and defendant (whether dealer and manufacturer, or principal and agent), nor does it depend upon whether there was an exclusive agency contract. The evidence does not establish that there was a contract between the parties. It does establish a course of dealing and doing business under conditions and circumstances hereinafter appearing.

While plaintiffs contend the relationship of the parties was that of principal and agent, and further contend that they (plaintiffs) did not agree to sell only the forms manufactured by defendant, the letter (if libelous) was such not because it stated plaintiffs were dealers but because it was untrue and libelous that plaintiffs had committed a "breach of good faith" in their business dealings. Plaintiffs submitted their case to the jury on their instruction 1. As a basis for their recovery plaintiffs therein required the jury to find that in the letters (published) defendant used the words, "these dealers of ours committed this breach of good faith", and that those words were libelous and untrue. Much of the evidence before us is upon the question of the then relationship of plaintiffs and defendant but that evidence and the then legal relationship of the parties cannot be determinative of the issues upon this appeal.

The pertinent portion of instruction 9 predicated a verdict for defendant if the jury "further find from the evidence that the matters so published were true as published." If (as stated in the letter) the evidence warrants a jury finding (1) that plaintiffs were dealers, and (2) that plaintiffs committed a breach of good faith, then plaintiffs' instant contention as to the above instruction is without merit and must be denied. In ruling this question we must consider the evidence in the light most favorable to defendant. If the evidence presents even so much as an allowable inference of (1) and (2) above, such an inference is legally sufficient.

The transcript before us is replete with testimony that plaintiffs were defendant's "dealers" in the St. Louis area for the business forms manufactured by defendant. The plaintiffs were "engaged in the business of making surveys in various (business) concerns, designing (business) forms and selling them." When the demands of a business indicated a need for business forms of the Snapout type, if that business firm ordered such forms from plaintiffs, from 1935 to 1938, the order therefor was generally sent by plaintiffs to defendant and those forms were then manufactured by defendant and shipped direct to the user. Mr. Krone testified that plaintiffs started doing business with defendant in November, 1934; that plain-

tiffs were than the only dealers in the St. Louis area for Snapout forms made by defendant, and, that in 1935 and 1936, plaintiffs placed about $7,300.00 of business with defendant; that from 1935 until at least September, 1939 defendant had no direct salesman or other dealer on the St. Louis territory; and that in 1938 when other companies started manufacturing the Snapout type of forms, plaintiffs then began placing their business with other manufacturers. Mr. Krone testified: "Q. You were the only dealer, (in the St. Louis area) to your knowledge, selling Snapout forms? A. That is right."

A dealer is not one who "buys to keep or makes to sell, but one who buys to sell again"; a dealer buys to sell as a business for gain or profit; he is a middleman who buys from the producer and sells to the customer or user of a commodity. A dealer is both a buyer and a seller and need not have a place to keep for sale that in which he deals. 17 C. J. 1154, Kansas City v. Ferd Heim Brewing Co., 98 Mo. App. 590, 73 S. W. 302, 11 Words and Phrases, (Perm. Ed.) 150, et seq. We hold that it is abundantly established that plaintiffs were dealers.

We next consider whether, under the circumstances of record here, it was allowably inferable that plaintiffs had committed a "breach of good faith." It appears that in 1935 plaintiffs were finding a market for Snapout type forms. In that year they made a trip to defendant's Ohio plant to determine whether defendant would continue to make Snapout forms for plaintiffs' customers. At that time plaintiffs could obtain that type of forms from only two manufacturers, the defendant and the Newport News Overfold Company in Virginia. In Ohio the defendant was more conveniently located to plaintiffs' customers. The Newport News Company did not make the Snapout type continuously, and that company had three or four other dealers, or solicitors for their forms, soliciting and selling in the St. Louis area. Defendant could sell their forms "cheaper than the Newport News could." Defendant gave a dealer an exclusive right to sell in the dealer's territory, and, where there was a dealer, defendant placed no salesmen on that territory but expected the dealer to push the sales of defendant's forms. Defendant had no other dealer or salesman in the St. Louis area from August, 1935 to January, 1940.

Plaintiff Brice testified that at the 1935 conference of the parties in defendant's Ohio plant, defendant agreed "that they (defendant) would continue to manufacture forms for us (plaintiffs)—for our accounts to our order; that they (defendants) would like to have us use their forms in this field as much as possible. * * * Q. And you told them (defendants) that you would keep on pushing their (defendant's forms that they manufactured, didn't you? A. Yes, sir."

Thereafter, mail inquiries received by defendant from potential customers in the St. Louis area for Snapout forms were forwarded to plaintiffs, and from 1935 to September, 1939 defendant filled no direct mail orders from St. Louis area customers at all. The listing for The Snapout Forms Company in the St. Louis telephone directory gave the telephone number of plaintiffs' office. Defendant cooperated and made suggestions to plaintiffs as to redesigning forms and minimizing costs to plaintiffs' customers. In 1938 other firms secured similar machinery and became able to manufacture the Snapout type of forms. In 1938, and without any notice to defendant ▇▇▇ of their intention to do so, plaintiffs began placing their customers' orders for the Snapout type of forms with other manufacturers. Defendant's total annual business upon order of plaintiffs dropped from $7351.50 in 1936 to $1,968.91 in 1939 and ceased altogether in September, 1939, when defendant became aware of the fact that it had no representation in the St. Louis area and that plaintiffs were having their customers' orders for Snapout forms filled by other manufacturers. On August 31, 1939, defendant wrote plaintiffs a letter discontinuing plaintiffs as dealers in the St. Louis area. Neither in writing nor orally had plaintiffs ever advised defendant of their intention to terminate the existing dealer arrangement or of their intention to give their Snapout form business to some other manufacturer.

It was written that faith is "the evidence of things not seen." But "good faith" is more than a state of mind. Under these circumstances it may also be a concrete principle upon which the world's business is daily transacted. A breach of good faith is not so wholly within the realm of the mind that it cannot be reasonably inferable. Even the state of a man's mind is reasonably inferable from what he says (or fails to say) and what he does (or fails to do) under certain circumstances. Concealment by plaintiffs of their intention to terminate the existing dealer course of doing business was a circumstance for the jury's consideration. It has been held that "good faith" is not an abstract thing, but "is a concrete quality, descriptive of the motivating purpose of one's act or conduct when challenged or called in question." Municipal Bond & Mortgage Corp. v. Bishop's Harbor Drainage District, 154 Fla. 246, 17 Sou. (2d) 226. We are persuaded that, under the circumstances of record here, whether plaintiffs had committed a breach of good faith was a question for the determination of the triers of these facts. The jury determined that question adversely to plaintiffs. We have examined the cases cited by plaintiffs. They support the abstract rule of law for which they purport to be cited. But here we have found no case at variance with our conclusion. The question here is that of the sufficiency of these facts to support an inference as to the truth of the letter.

We rule that plaintiffs' contention as to instruction 9 is without merit and must be denied.

■ It is next contended that (we quote from plaintiffs' brief), "It was prejudicial for the trial court to let defendant's witness Rutz try to prove the terms of the alleged contract with plaintiffs by showing business arrangements between defendant and others in other cities. This was a plain error, and, although perhaps defectively saved should be reviewed on appeal."

The record shows that plaintiffs' objection to that part of Mr. Rutz' testimony was sustained by the court, and that plaintiffs' motion that the jury be instructed to disregard it was sustained. The trial court thereupon so instructed the jury. We cannot agree with plaintiffs that they may here invoke our Rule 3.27. The trial court did all that plaintiffs requested. Their objection was sustained, the testimony was stricken and the jury were instructed to disregard the testimony. Under these circumstances plaintiffs cannot be heard to complain. There is neither substance nor merit in this contention.

■ Plaintiffs finally contend that the court erred in admitting defendant's Exhibits 4, 5, 6, 7 and 8 without first requiring proof of the date they were made. These exhibits were five different Snapout business forms. Each one bore a marginal imprint in fine print, as follows: "The Snapout Forms Company, Chardon, Ohio. Manufacturers of 'Snapout Forms'—Trade Mark Registered. Krone-Brice Co., St. Louis, Mo." Examination of those exhibits (filed here) shows that each was a type of form made by defendant for a different customer of plaintiffs. Those exhibits tended to and did enable the jury to better understand the testimony. And some of the exhibits were admissible for impeachment. The marginal imprint plainly fixed the time the forms were made as sometime during the existence of the dealer arrangement, 1935 to 1939. Further proof as to date was neither important nor determinative ■ of any issue in the case. In any event the admission of these exhibits could not have been prejudicial. The contention is without merit and must be overruled.

The judgment of the trial court is affirmed. It is so ordered. All concur.