**STATE BOARD OF INSURANCE of the State of Texas et al., Appellants,**

v.

**PROFESSIONAL AND BUSINESS MEN'S INSURANCE COMPANY, Appellee.**

No. 11005.

Court of Civil Appeals of Texas.

Austin.

July 11, 1962.

Rehearing Denied Aug. 1, 1962.

Will Wilson, Atty. Gen., Bob E. Shannon and Dudley D. McCalla, Asst. Attys. Gen., Heath & Davis, Austin; Fulbright, Crooker, Freeman, Bates & Jaworski, Olan B. Lowrey and W. H. Vaughan, Jr., Houston, for appellants.

Frank G. Newman, Dallas; Jake Jacobsen, Austin, for appellee.

RICHARDS, Justice.

This is an appeal from an order of the 53rd Judicial District Court of Travis

County granting a temporary injunction enjoining and restraining the State Board of Insurance, composed of Ned Price, Durwood Manford and Joseph Trosper, appellants, from issuing any license or certificate of authority to Professional Investors Insurance Company (or Allied Investors Insurance Company) to transact insurance business in Texas. Professional Investors Insurance Company (or Allied Investors Insurance Company) having intervened as a party defendant is also an appellant herein. For brevity the State Board of Insurance will be hereafter referred to as the "Board", Professional Investors Insurance Company (or Allied Investors Insurance Company) will be referred to as "intervenor" and Professional and Business Men's Insurance Company will be referred to as "appellee".

Suit was filed by appellee under the provisions of Article 1.04, Texas Insurance Code, Vernon's Civil Statutes, as an appeal from an order of the Board approving the issuance of a charter to intervenor, which had previously been approved by the Commissioner of Insurance. At the time the suit was filed the Trial Court issued a temporary restraining order enjoining the Board from issuing a certificate of authority to intervenor. At the hearing on the temporary injunction, both the Board and intervenor having filed pleas to the jurisdiction of the Court to enjoin the validity of the Board's order, the Trial Court overruled the pleas and granted the temporary injunction. The Board and intervenor have duly perfected their appeals from the order granting the temporary injunction.

A summary of the factual situation which existed at the time of the temporary injunction hearing reveals that on January 17, 1962, an application for a charter in the name of Professional Investors Insurance Company was filed by intervenor with the State Board of Insurance pursuant to Art. 3.04, T.I.C. On January 29, 1962 a public hearing upon the application was held by the Commissioner of Insurance, hereinafter referred to as Commissioner, at which time

appellee, Professional and Business Men's Insurance Company, intervened and objected to the issuance of a charter to intervenor on various grounds, one of which was that the name Professional Investors Insurance Company was so similar to the name of appellee as to likely mislead the public contrary to Sec. 1, Art. 3.02, T.I.C.

After the hearing the Commissioner entered an order on February 6, 1962 approving the application, directing that the articles of incorporation be submitted to the Attorney General of Texas for his approval and upon approval of the application and upon compliance by the company with Arts. 3.04 and 3.06, T.I.C., an examination of the company would be conducted but that the certificate of authority to transact business would be issued only after further order by the Commissioner after an examination of the company according to the provisions of Art. 3.06, T.I.C. from which order appellee gave notice of appeal to the Board. On February 7, 1962 the Board entered an order staying the Commissioner's order pending hearing before and order by the State Board of Insurance upon such appeal.

On February 19, 1962 the Board held a hearing on the appeal at which time additional evidence was presented by appellee in support of its grounds for appeal and on March 14, 1962 the Board entered its order approving the original incorporation of intervenor under the name of Professional Investors Insurance Company and approving the order of the Commissioner.

■ Appellants' first point of error is that the Trial Court was without jurisdiction to issue a temporary injunction enjoining the Board from issuing a certificate of authority to intervenor under the provisions of Art. 3.06, Texas Insurance Code. Appellants contend that since Art. 1.04(f), T.I.C., does not specifically authorize the Trial Court to grant injunctive relief pending trial upon the merits, it was without authority to grant the temporary injunction, citing Board of Insurance Commissioners v. Adams, Tex.Civ.App., 286 S.

W.2d 708, error ref., N.R.E.; Cosmo Life Ins. Co. v. State Board of Insurance, Tex. Civ.App., 319 S.W.2d 162, (no writ history) and White v. Bolner, Tex.Civ.App., 223 S.W.2d 686, error ref. Appellants also rely upon the language in State Board of Ins. v. Adams, supra, that in enacting Art. 1.04(f) as an amendment to the Texas Insurance Code the Legislature intended to establish a uniform method of appeal thereby repealing all prior provisions in the Code relating to appeals from orders of the Board. We are unable to agree with either of appellants' contentions.

 Under the authority of Sec. 8, Art. V, Constitution of Texas, Vernon's Ann.St., which provides that the District Court shall have power to issue writs of injunction, the Legislature enacted Art. 4642, Vernon's Ann.Civ.St., empowering judges of the District Courts to grant writs of injunction where the applicant shows himself entitled to the writ under the principles of equity and the statutes of this State. Under such constitutional and statutory authority a district judge may grant temporary injunctive relief to preserve the status quo of the subject matter of the litigation until trial upon the merits where there is jurisdiction over the parties and the subject matter. City of Dallas v. Wright, 120 Tex. 190, 36 S.W.2d 973, 77 A.L.R. 709; Rogers v. Daniel Oil & Royalty Co., Tex.Civ.App., 105 S.W.2d 476; aff. 130 Tex. 386, 110 S.W.2d 891. It is also a rule of law that District Courts may restrain the enforcement of administrative orders of State Boards and agencies for the purpose of preserving the status quo pending the trial on the merits of a suit to set aside such order. Railroad Commission v. Shell Oil Co., 146 Tex. 286, 206 S.W. 2d 235, 242; Transport Co. of Texas v. Robertson Transports, 152 Tex. 551, 261 S.W.2d 549, 552.

 In a hearing on an application for temporary injunction the question before the Trial Court is the right of the applicant to a preservation of the status quo of the subject matter of the suit pending a final trial on the merits. To warrant the issuance of the writ the applicant need only show a probable right thereto and that probable injury would result from a denial of the relief, but it is not necessary to establish that the applicant will finally prevail in the litigation. Where the pleadings and the evidence present a case of probable right and probable injury, the Trial Court is given broad discretion in determining whether the writ shall issue and its order will be reversed only upon a showing of a clear abuse of discretion. Transport Co. of Texas v. Robertson Transports, supra; Railroad Commission of Texas v. San Antonio Compress Co., Tex.Civ.App., 264 S.W. 214, 216; error ref., 114 Tex. 582, 278 S.W. 1115.

Appellants argue that the general statement of the rules governing the granting of temporary injunctions in the Robertson case is inapplicable here, since the statute construed by the Supreme Court in that case authorized injunctive relief, and since Art. 1.04(f), T.I.C., does not specifically provide for such relief, such rules are inapplicable. That this argument is without merit is demonstrated by the opinion in Board of Insurance Commissioners v. Adams, supra, one of the cases relied upon by appellants, wherein it is stated:

"We believe that the status quo in this case is that as of the day the Board entered its order refusing to renew appellee's license that the appellee had no license, any such license having expired by operation of law on March 31, 1955, six weeks prior to the Board's order. Transport Co. of Texas v. Robertson Transports, Inc., 152 Tex. 551, 261 S. W.2d 549."

Thus this Court has specifically recognized that temporary injunctive relief would be applicable to maintain the status quo.

 Appellants' contention that Art. 1.04(f), T.I.C., specifically repealed all other provisions of the Texas Insurance Code

providing for appeals from orders of the Board in specific cases is also without merit. International Service Ins. Co. v. Jackson, Tex.Civ.App., 335 S.W.2d 420, 422, involved the construction of Art. 5.40 of the Insurance Code which provided that after the making of regulations, orders, rates or schedules by the Board any interested person dissatisfied with the action of the Board should have the right within 30 days after the making of the regulation, order, rate or schedule to bring an action against the Board in the District Court of Travis County to have such regulation or order vacated or modified. The statute further provided that:

"No injunction, interlocutory order or decree suspending or restraining, directly or indirectly, the enforcement of any schedule, rate, order or regulation of said Board shall be granted."

The Trial Court denied the temporary injunctive relief and dismissed the case for want of jurisdiction since it was filed more than 30 days after the entry of the Board's order and held that it was without jurisdiction to grant the temporary injunction under the terms of the statute.

The Insurance Company contended that the provisions of Art. 5.40 regarding the filing of suit within 30 days and the prohibition against the granting of injunctive relief had been repealed by Secs. (d) and (f) of Art. 1.04. After stating the rules governing the repeal of laws by implication, the Court held:

"Applying the above tests to the issue here it cannot be said that the thirty day provision for taking an appeal from the order of the Board as contained in Art. 5.40, supra, was repealed by Senate Bill 222. There is nothing to prevent the two provisions from standing together and it is our opinion that Art. 5.40 fixes the time within which an appeal from the Board's order must be taken, and since the appeal here was not taken within that time appellants' point one does not present error.

"Our second quote supra from Art. 5.40 is applicable to appellants' second point. However our holding that the appeal was not timely taken disposes of the second point because the trial court never acquired jurisdiction of the appeal."

The cases cited by appellants as sustaining their contentions are not applicable to the factual situation here presented. In the Adams case, supra, the injunctive relief sought by Adams to maintain the status quo would have permitted the applicant to continue to violate the law. In the Cosmo Life Insurance Company case where injunctive relief was granted to maintain in effect a general rate order which had been superseded by an amended order, the Court in dissolving the injunction, stated:

"Cosmo and associates are entitled to a judicial review of the Board's order but such review does not entitle them to a temporary injunction the effect of which is to perpetuate rules, regulations and rates which the Board by its order of February 24, 1958, superseded."

White v. Bolner, supra, involved the removal of Board members of the San Antonio Housing Authority Board by the Mayor of San Antonio under statutory authority containing no specific provision for court review of the order. Injunctive relief was sought on the basis that in the absence of a statutory provision for review by the courts the statute was unconstitutional. The Court held that the absence of such provision did not render the statute unconstitutional since such review was implied and that injunctive relief should be denied since the applicants had the right to a judicial review of their ouster, but they did not have the right to have the order rendered inoperative pending such review.

In the case at bar appellee filed an appeal from the action of the Board in granting a charter to intervenor upon the ground

that such order was invalid and was granted a temporary injunction against the Board restraining the Board from issuing a license or certificate of authority under Art. 3.06, T.I.C. to intervenor to engage in or transact an insurance business, pending trial on the merits of the validity of the Board's order granting a charter to intervenor. The Trial Court's order granting the temporary injunction does not attempt to restrain or enjoin the Board or the Commissioner from the issuance of the charter to intervenor but only from approving any certificate of authority or issuing any license to intervenor to transact business or from taking any action which would have the effect of permitting or authorizing intervenor to transact a life insurance business in Texas. It does not purport to set aside any order of the Board or Commissioner which had been entered prior to the granting of the temporary injunction but only to preserve the status quo which existed at the time the temporary injunction was granted.

It being our opinion that the Trial Court had jurisdiction to issue the order granting the temporary injunction restraining the Board from issuing a license or certificate of authority to intervenor to preserve the status quo pending trial upon the merits, appellants' first point of error is overruled.

■ For their second point of error appellants assert that the Trial Court erred in holding that the complainant would probably prevail on a trial on the merits although there was an abundance of substantial evidence to support the order of the Board adduced at the hearing on the temporary injunction. Appellants argue that since in the granting of temporary injunctive relief pending trial on the merits, it is necessary that the applicant show under the pleadings and the evidence a probable right to the relief sought, and if it appears that there is substantial evidence to support the order of the administrative body which as a matter of law would preclude the ap-

plicant from prevailing at the trial on the merits, the temporary injunctive relief must be denied. It is clear that appellants' contention is based upon the presumption that the trial on the merits in the instant case will be conducted under the "substantial evidence" rule. Upon this basic assumption appellants devote a considerable portion of their brief to setting forth and discussing the "substantial evidence" supporting the Board's order which was adduced at the hearing on the temporary injunction.

However, the Supreme Court of Texas in the Robertson Transport case, supra, has disposed of appellants' contention in the following language:

"We cannot agree with the contention of respondent that the issue on this appeal is governed by the substantial evidence rule and that the judgment granting the temporary injunction should be reversed if the record made in the trial court reflects that the Commission's order is supported by substantial evidence. No case so holding has been cited to us, but, on the contrary, there are a number of cases in which the usual and customary rules governing appeals from the granting of temporary injunctions were applied in reviewing similar orders restraining the enforcement of administrative orders. For examples, see Railroad Commission v. Shell Oil Co., 146 Tex. 286, 206 S.W.2d 235, 242–243; Southwestern Greyhound Lines v. Railroad Commission, 128 Tex. 560, 99 S.W.2d 263, 270, 109 A.L.R. 1235.

"While the question of whether an administrative order is supported by substantial evidence is a question of law, it can only be determined from a review of the entire record after a full and final hearing in the trial court. (Citing cases.) The entire record is not made until a trial on the merits has been had. We cannot assume that the evidence taken on the final trial of

this case will be the same as the evidence introduced in the preliminary hearing and a decision on the question would be premature at this point." (261 S.W.2d 1. c. 553).

In our opinion the trial upon the merits of the case at bar would not be under the "substantial evidence" rule but it should be tried and determined as a trial de novo to the same extent as in the case of an appeal from the Justice Court to the County Court. Art. 1.04(f), T.I.C.

In considering the intervenor's application for charter the Legislature has provided in Sec. 3, Art. 3.04, T.I.C., the criteria based upon which the Board shall act, which are as follows:

"Sec. 3. In considering any such application, the Board shall, within thirty (30) days after public hearing, determine whether or not:

"(a) The minimum capital and surplus, as required by law, is the bona fide property of the company;

"(b) The proposed officers, directors and managing executive have sufficient insurance experience, ability and standing to render success of the proposed company probable;

"(c) The applicants are acting in good faith.

"Sec. 4. If the Board shall determine by an affirmative finding any of the above issues adversely to the applicants, it shall reject the application in writing giving the reason therefor. Otherwise the Board shall approve the application and submit such application together with the articles of incorporation and the affidavit to the Attorney General for examination. * * *"

In determining the findings required by Art. 3.04, the Board is exercising a quasi-judicial function. Where an administrative body in the entry of an order acts in a semi-judicial capacity as opposed to a legislative function and the statute provides that in an appeal to the courts to review the legality of the order, the trial shall be by a de novo review, such requirement is constitutional and mandatory. Key Western Life Insurance Company v. State Board of Insurance, Tex.Sup., 350 S.W.2d 839, 845–850.

Appellants state in their brief that the State Banking Board has to make essentially the same required findings to grant a banking charter as the State Board of Insurance must make in granting an insurance charter. Three of the findings required by Art. 342–305, Texas Banking Code, V.C.S., are practically identical with the findings required under Sec. 3, Art. 3.04 of the Insurance Code. In State Banking Board v. McCulloch, Tex.Civ.App., 316 S.W.2d 259, 266, error ref., N.R.E., the Court held that the State Banking Board in making the findings required by Art. 342–305 was exercising a quasi-judicial function. If the action of the State Banking Board in making the findings required under Art. 342–305 was an exercise of a quasi-judicial function, then it is manifest that in making the findings required by Sec. 3, Art. 3.04 of the Insurance Code the State Board of Insurance was exercising a quasi-judicial function.

Appellants correctly state that in the McCulloch case on the appeal from the order of the State Banking Board to the courts under Art. 342–115, Texas Banking Code, the trial was conducted under the "substantial evidence" rule. Art. 342–115, V.C.S., states that the orders of the State Banking Board may be appealed to a court of competent jurisdiction where the trial "shall be de novo the same as if said matter had been originally filed in such court." While there may be some similarity in the verbiage of Art. 342–115, V.C.S. and Art. 1.04(f), T.I.C., regarding the manner in which the case shall be tried before the court upon appeal, nevertheless it must be borne in mind that all of the appellate decisions construing the method of trial on appeals from the orders of the State Banking Board as

being under the "substantial evidence" rule were decided prior to the decision in the Key Western case less than a year ago. Even prior to the decision in the Key Western case there have been other appellate decisions interpreting statutes providing for review by trial de novo under the "preponderance of the evidence" standard instead of the "substantial evidence" rule.[1]

■ The trial on the merits in the instant case should be a trial de novo under the preponderance of the evidence standard under the authority of the Key Western case and not under the "substantial evidence" rule as contended by appellants and the issues of fact to be determined under Art. 3.04 must be submitted to and decided by the Trial Court, or a jury if one be demanded, upon a preponderance of the evidence.

In its verified petition appellee alleged that until January 23, 1962 and for a considerable period prior thereto Harold E. Riley and four other named individuals who were stockholders of intervenor had held positions of trust and confidence with the executive management of appellee, Harold E. Riley being vice president and agency director and the others serving as director of sales and director of public services, and regional managers; that on March 1, 1961, Riley and the other four individuals disregarding their positions of trust and confidence secretly conspired to organize a new company which would compete directly with appellee, which company was to be the Professional Investors Insurance Company and that it was the plan of such individuals to raid the agency force of appellee and to divert it to the new company, which action was taken while such individuals were fiduciaries of appellee and while they were being compensated by appellee for their time and services; that prior to

their resignations from appellee such fiduciaries secretly commenced the organization of the new company by reserving the corporate name "Professional Investors Insurance Company" which was designed to be confusingly similar to that of appellee and that the subscriptions for the stock in the new company and application for the charter thereof was filed with the Board approximately six days prior to the resignation of the five fiduciaries; and that in furtherance of their plan to unlawfully divert to the new company a part of the agency force and business of appellee such fiduciaries wrongfully used the time, money, employees, officers and facilities, including travel expenses and the policyholders lists and stockholders lists, of appellee, by which conduct they caused a substantial part of appellee's agency force to resign at or about the time they submitted their resignations.

It was further alleged that at the hearings appellee objected to the issuance of any charter to intervenor upon the grounds that the name of the new company was so similar to that of appellee as to mislead the public in violation of Art. 3.02, T.I.C.; that the applicants were not acting in good faith; that the minimum capital and surplus required by Sec. 3(a), Art. 3.04 was not the unencumbered property of intervenor and that its proposed officers, directors and managing executives did not have sufficient experience, ability and standing to render success of the proposed company probable as required by Sec. 3(b), Art. 3.04; that although on February 7, 1962 the Board entered an order staying the Commissioner's order the Commissioner subsequently mailed a certified copy of the charter to intervenor and caused an examination to be made of intervenor to determine whether it should be licensed to transact business and in addition accepted a charter amendment by in-

1. State Board of Insurance Commissioners v. Fulton, Tex.Civ.App., 229 S.W.2d 652, error ref., N.R.E., 149 Tex. 347, 234 S.W.2d 389 (1950) (Texas Insurance Code, Art. 21.14); Rockett v. Texas State Board of Medical Examiners, Tex. Civ.App., 287 S.W.2d 190 (1936) error ref., N.R.E. (Art. 4506, V.C.S.); Cortez v. State Board of Morticians, Tex.Civ. App., 306 S.W.2d 243, error dism., w. o. j., 157 Tex. 649, 308 S.W.2d 12 (1957) (Art. 4582b, V.C.S.).

tervenor to change its name to Allied Investors Insurance Company and prayed that the order of the Board granting the charter be rescinded and that the Board be temporarily enjoined from approving any charter to intervenor (or Allied Investors Insurance Company) or granting any license or certificate of authority to intervenor to transact business and that upon trial on the merits such temporary injunction be made permanent.

On the temporary injunction hearing appellee offered evidence consisting of affidavits and other documentary evidence and the Board and intervenor offered the oral testimony of witnesses supplemented by affidavits and other documentary evidence. The evidence was conflicting. The Trial Court, after considering the pleadings and the evidence adduced, entered the following order:

"* * * and it appears that Professional Investors Insurance Company is composed of persons formerly employed by plaintiff in positions of trust and confidence and probably will undermine the confidence of key employees, executives, agents and general agents of plaintiff and probably induce such employees, executives, agents and general agents to breach their contracts with plaintiff and to become employees, executives, agents and general agents of Professional Investors Insurance Company, intervenor, and that the State Board of Insurance of the State of Texas, defendant, in granting such license will probably act in disregard of the authority granted it in Articles 3.02 and 3.04 of the Texas Insurance Code and that the issuance of such license will result in irreparable and inestimable damage to the plaintiff; and that the plaintiff in said hearing has made a proper showing of a probable right and probable injury of the matters in the temporary injunction prayed for:

"It is accordingly ORDERED, ADJUDGED and DECREED that the

clerk of this court issue a writ of injunction pending final hearing and determination of this cause restraining and enjoining the State Board of Insurance of the State of Texas, defendant, and the Commissioner of Insurance from approving any certificate of authority or issuing any license to Professional Investors Insurance Company or Allied Investors Insurance Company to transact business, or from taking any action whatsoever which would have the effect of permitting or authorizing said company to transact life insurance business in this state; however, the State Board of Insurance of the State of Texaas, defendant, may in its discretion, approve or disapprove the Articles of Amendment to the Articles of Incorporation of Professional Investors Insurance Company, intervenor, which Articles of Amendment have the effect of changing the name of Professional Investors Insurance Company to Allied Investors Insurance Company, * * *"

At the conclusion of the hearing the Trial Court made oral findings of fact as a predicate for granting the injunction which are in part:

"This record to me is incredible—that any organization could be formed in the manner that Intervenor has been formed; that employees, officers, of an insurance company could utilize the time, the staff, and the money of their employer to organize a competing company, to adopt the names that have been undertaken to be adopted here in the order that they have—Professional Men's Insurance Company, Professional Investors Insurance Company, and now the one which is nowhere near the name of the plaintiff. And I cannot believe, as urged by counsel, that Mr. Riley in good faith believed that he had the right to use the money of his employer to finance his employer's execution or possible dismemberment. If he honestly believed that, then that

clears him morally, but it indicts his intelligence. * * *

"However, I would be less than honest if I did not state that the adoption of these names, starting with almost an identical one, then retreating a little and now here in court retreating all the way—bears upon the question of the good faith of the organizers of this company. I do not know what good faith means in the statute where it says, 'the applicants are acting in good faith.' The Commissioner says that in his opinion it relates to good faith and intention in the formation of and the future operation of the insurance company.

"From the statements I have made I guess it is clear that it is the opinion of the Court that good faith was not shown in the formation of this company, —that is, good faith toward a lot of people. I don't know toward whom the good faith referred to in the statute applies, but let me say here that the fiduciary obligation that rested upon Mr. Riley and Mr. Blackburn and the other employees of the old company was not just a fiduciary obligation toward Mr. Biggers, not just a fiduciary obligation toward the stockholders or the Board of Directors, but it was as I view it, a fiduciary obligation to everybody who had a stake in this company; I think in particular the policyholders, and even the creditors of the company who had a stake in its honest, devoted, loyal prosecution. They were not getting that, obviously, between October and January 23rd.

"Now, with respect to the probability of injury I think no comment is required. The probability of injury is obvious, and I am certain that there is not any real dispute on that.

" * * * My real concern here, gentlemen, is not with reference to the plaintiff as a legal entity or the intervenor as a legal entity. My real concern here in balancing the equities is with reference to those who are going to be affected from this day forward, those to whom stock is to be tendered, those to whom insurance in the intervenor company is to be tendered during the pendency of this cause. With the very existence of this company in question as it is in this lawsuit, there is a grave responsibility not only upon the Court but upon the officers and directors of the intervenor if it is to be going to the public presenting its stock and its policies, when its very life is being challenged. * * *

"Let me say further with reference to the qualifications of the organizers referred to in the statute and by counsel, * * * I am not sure what qualifications are referred to in this particular statute when it says 'experience, ability and standing,' but again I guess I would be a little less than forthright if I did not state that when, in the insurance business, officers have been wanting in a fiduciary position in their obligations toward management, stockholders, and I think policyholders, that does not give high promise that they will be faithful to the same fiduciary obligation in another undertaking."

Since this is an appeal from an interlocutory order granting a temporary injunction and not from a judgment in a trial on the merits, it is not within the province of this Court to pass upon the weight or preponderance of the evidence adduced at the hearing as being sufficient to support a judgment either upholding or invalidating the order of the Board granting the charter. Under the rules of law governing the granting of temporary injunctive relief for the purpose of the preservation of the status quo set forth above, it is our duty to ascertain whether under the pleadings and evidence adduced before the Trial Court appellee has shown a probable right thereto and that a probable injury would result from a denial thereof and if the Trial Court as the judge of the credibility of the testimony and the weight to be given thereto has

granted such relief, we may reverse the judgment of the Trial Court only in the event of a showing of a clear abuse of discretion by the Trial Court. City of Houston v. Southwestern Bell Tel. Co., Tex. Civ.App., 263 S.W.2d 169, 171, error ref.

From a careful examination of the record it is our opinion that under the pleadings and the evidence appellee has shown a probable right to the issuance of the injunctive relief and that a probable injury would result to appellee and the public if the intervenor were allowed to transact a life insurance business by the issuance of policies and the issuance and sale of its stock while there exists a possibility that the legality of its corporate existence is in doubt. It is also our opinion that there is no showing of a clear abuse of discretion by the Trial Court in granting the temporary injunction against the Board from issuing to intervenor a certificate of authority to transact a life insurance business under the provisions of Article 3.06 of the Insurance Code pending trial upon the merits.

However, it is clear from the oral statement made by the Trial Court at the conclusion of the hearing that he was in doubt as to the meaning of the words "good faith" as set forth in Sec. 3(c), Art. 3.04, which requires the finding that "the applicants are acting in good faith." The Trial Court then quotes the Commissioner's statement that he considered that the provisions in Art. 3.04 relating to the applicants acting in good faith, relates to good faith and intention in the formation of and the future operation of the insurance company. The Trial Court, however, had a different interpretation of the words "good faith."

There appear to be no appellate decisions by the courts of Texas construing the meaning of the words "good faith" as used in Sec. 3(c), Art. 3.04 of the Insurance Code, nor have there been any decisions by the appellate courts of Texas construing the identical words appearing in Art. 342–305 of the Texas Banking Code providing as a requisite for the granting of a banking charter that the "applicants are acting in good faith." In Walraven v. Farmers' & Merchants' National Bank, 96 Tex. 331, 74 S.W. 530, 534, the Supreme Court stated that: "The expression 'good faith' is used in the law to qualify many different kinds of actions. * * * One who acts honestly, and not fraudulently, is said to act in good faith. * * *" Other appellate courts of Texas have defined the words "good faith" in different connections. Yarbrough v. Brookins, Tex.Civ.App., 294 S.W. 900, 905; Peden Iron & Steel Co. v. Jenkins, Tex.Civ. App., 203 S.W. 180, 188. That the words "good faith" have many different meanings in different contexts is apparent from the cases cited in Vol. 18A, Words & Phrases, Good Faith pp. 84–131.

In Appel v. Morford, 62 Cal.App.2d 36, 144 P.2d 95, 97, "good faith" is defined as follows:

"As understood in law, the phrase 'in good faith' has a settled and well-defined meaning, which generally imports that in any given case the transaction involved was *honestly conceived* and consummated without collusion, fraud, or knowledge of fraud, and without intent to assist in a fraudulent or otherwise unlawful design." (Italics supplied.)

In Municipal Bond & Mortgage Corp. v Bishop's Harbor & Drainage District, 154 Fla. 246, 17 So.2d 226, 227, 228, the Supreme Court of Florida stated:

"Good faith is not an abstract quality floating in the firmament like bacteria in a foul breath. It is a concrete quality, descriptive of the motivating purpose of one's act or conduct when challenged or called in question. * * * It is quite true that in many instances compliance with the literal terms of the statute is shown but the manner and means employed to do so were devoid of the elements of good faith."

The Supreme Court of Missouri in Krone v. Snapout Forms Co., 360 Mo. 821, 230

S.W.2d 865, 869, adopted the definition of "good faith" by the Supreme Court of Florida in the Municipal Bond & Mortgage Co. case. The Supreme Court of Michigan in Bliss Petroleum Co. v. McNally, 254 Mich. 569, 237 N.W. 53, 55, stated that "Good faith includes, not only personal upright mental attitude and clear conscience, but also intention to observe legal duties."

For a determination of the meaning of the words "good faith" as used in Art. 3.04 (c), appellants rely upon the construction of the Commissioner that such words relate to the good faith and intention in the formation and future operation of intervenor's insurance company and the interpretation of the Kentucky Court of Appeals in Speer v. Dossey, 177 Ky. 761, 198 S.W. 19, where in passing upon a Kentucky statute requiring that in granting a bank charter the Banking Commissioner "shall also inform himself that the incorporators are seeking to establish a bona fide banking or trust business, and are acting in good faith, * * *," the Court held:

> "The good faith contemplated by the statute has reference only to a fixed purpose and intention on the part of the incorporators to engage in a regular banking business as distinguished from a stock jobbing or advertising scheme in the interest of some auxiliary enterprise; the words 'good faith' in the sense employed in this statute mean a settled purpose or determination to inaugurate and carry on a legitimate banking or trust business in the usual course, as contradistinguished from the flotation of a spurious or false representation of such an institution. * *

> "The statute does not contemplate the suppression of competing banks by the withholding of the approval of the commissioner to articles of incorporation merely upon the ground that the business may not prove profitable, or may be a detriment to a bank already established in a given community. *It is the duty, however, of the banking commissioner to look to the moral standing* and financial worth *of the incorporators* and their good faith and intention to carry on a regular legitimate banking or trust business. * * * It has been and is the policy of this state to encourage the establishment of banks and other corporations even in competition to one another because out of a wholesome rivalry the general public derives a benefit."* (Italics supplied.)

The question of competition between intervenor and appellee if the charter of intervenor had been obtained by its applicants in "good faith" is not the question to be resolved here, since it is not against the public policy of this State to discourage competition between insurance companies which have been granted charters and certificates of authority to engage in the insurance business in accordance with the statutory requirements and hence Speer v. Dossey is not in point.

But here, the question of "good faith" which must be resolved is whether the organizers of intervenor were acting in good faith with appellee, its stockholders and policyholders under the evidence before the Board and the Trial Court, which, although conflicting, made out a prima facie case of violation of fiduciary obligations by the principal organizers of intervenor.

Applying the definitions of good faith above cited and which we believe applicable to the law of this case upon a trial on the merits, there is a question as to whether the transaction involved was honestly conceived and consummated without collusion, fraud, or knowledge of fraud and in addition whether the manner and means employed in the application for intervenor's charter were devoid of the elements of good faith even though in compliance with the literal terms of Sec. 3, Art. 3.04, T.I.C. We do not give to the words "in good faith" as used in the statute the narrow interpretation of the Commissioner

but prefer and adopt the more broad and general definition used in Appel v. Morford, supra.

The Trial Court also stated orally that he was not certain what qualifications were referred to in the statutory requirement under Sec. 3(b), Art. 3.04 that the proposed officers, directors and managing executive have sufficient insurance experience, ability and standing to render the success of the proposed company probable. The words "experience" and "ability" have well defined meanings. The evidence adduced before the Trial Court as to the "experience" and "ability" of the proposed officers, directors and managing executive of intervenor was conflicting. The word "standing" has been defined as one's place in the community in the estimation of others; his relative position and social, commercial or moral relations; his repute, grade, or rank. Gross v. State, 186 Ind. 581, 117 N.E. 562, 565, 1 A.L.R. 1151.

The evidence before the Board and the Trial Court was also conflicting as to the "standing" of the proposed officers, directors and managing executive of intervenor. In view of such conflicting evidence, the question of whether the proposed officers, directors and managing executive of intervenor had sufficient insurance experience, ability and standing to meet the requirement of Sec. 3(b), Art. 3.04 is to be determined by the trier of the facts when this case is tried upon the merits.

Appellee having shown such probable right and such probable injury which would entitle the issuance of temporary injunctive relief for the preservation of the status quo under the pleadings and the evidence and there being no showing of a clear abuse of discretion by the Trial Court in granting the temporary injunction, the judgment of the Trial Court is affirmed.

Affirmed.

HUGHES, Justice (dissenting).

The suit in which this temporary injunction was issued was a suit for a permanent injunction enjoining the State Board of Insurance "from approving any charter or issuing any license to Professional Investors Insurance Company or Allied Investors Insurance Company to transact business or taking any action whatsoever which would have the effect of permitting or authorizing said company to transact a life insurance business in this State."

Appellee pleaded a cause of action when it alleged:

"(a) The name of Professional Investors Insurance Company is so similar to that of Professional and Business Men's Insurance Company as to be likely to mislead the public, in view of the circumstances of the persons to be associated with Professional Investors Insurance Company and their previous association with Professional and Business Men's Insurance Company.

"(b) The applicants for the charter of Professional Investors Insurance Company are not acting in good faith.

"(c) The minimum capital and surplus, as required by law, of Professional Investors Insurance Company is not the bona fide, unconditional and unencumbered property of Professional Investors Insurance Company.

"(d) The proposed officers, directors and managing executive do not have sufficient insurance experience, ability and standing to render success of the proposed company probable."

In my opinion, however, the evidence does not tend to sustain the cause of action pleaded, and the temporary injunction should not have issued. Transport Co. of Texas v. Robertson, 152 Tex. 551, 261 S. W.2d 549. I, therefore, respectfully dissent.

As to ground (a), appellant has filed an application to amend its charter by changing its name to Allied Investors Insurance Company. This amendment, when effected, will completely eliminate this basis for in-

junctive relief. I do not understand appellee to contend to the contrary.

As to ground (c), there is no evidence in this record that the $255,000.00 on deposit in the Fannin State Bank of Houston, as capital and surplus for this corporation is not the bona fide, unconditional and unencumbered funds of the corporation. The Vice President and Cashier of such Bank, Mr. George Gentry, as well as incorporators, Harold E. Riley, Paul E. Martin and William W. Blackburn, swore, the last three unconditionally, Mr. Gentry insofar as the Bank had knowledge, that such funds were the bona fide, unconditional and unencumbered property of the new corporation.

Appellee pleaded that:

"On January 29, 1962 plaintiff instituted Cause No. 23965–C in the 153 Judicial District Court, Tarrant County, Texas, against Professional Investors Insurance Company and all of its stock subscribers, and others, and in such action plaintiff requested that the Court impress a trust upon all of the stock and all of the assets of Professional Investors Insurance Company, for the use and benefit of plaintiff. Fannin State Bank, as the depository of all of the capital and surplus of Professional Investors Insurance Company, was made a party to said action on February 12, 1962. On January 31, 1962 the State Board of Insurance was advised of such action and on February 15, 1962 it was advised that Fannin State Bank was made a party to such action."

The majority does not dignify this allegation by mentioning it. As this record now stands, this suit is fictitious, self-serving and an obvious attempt by appellee to bolster its position in this case. If it has any influence at all on the conscience of a chancellor, it would seem to me that it should be adverse to appellee.

As to ground (d), the proposed officers and directors of the new corporation are Herman Hare Everitt, Harold Eugene Wiley, William Whitford Blackburn, Raymond Lloyd Graham, Leland L. Martin, John Baily Ferguson, Dr. Charles Harris Howard, M. D., Harvie Allen Parker, Roland Arthur Lipscomb, Hubert Ellis Morris and James Tullis Shahan. Briefly, I will state the undisputed biographical data as to each of these persons as shown by the record.

Mr. Everitt: Resides in Odessa, Texas. Born 1892. Education, Goldthwaite High School, Howard Payne College. Has been in own cattle business since he was 21 years old. Is now in cattle and oil business.

Mr. Riley: Born 1928. Resides in Houston, Education, Paschal High School, Fort Worth, Baylor University where he received degree in Business Administration. He has worked in automobile sales. For three years he was teacher-coach in Crane and Plainview. Since 1955 he has been in the life insurance business. He is a member of several civic, church and school organizations, including Chairman Fellowship of Christian Athletes, Who's Who in American Colleges and Universities, Athletic Committee, Baylor, Decon Willow Meadows Baptist Church. Further, regarding, Mr. Riley who was to be President and Chairman of the Board of Directors of the new corporation, Mr. Harmon Walters, a former agent for appellee, testified:

"Q. I asked you why you resigned, and you said because Mr. Riley was not going to be further connected with the company, and you didn't want to be. Why was that?

"A. Being associated with Oil Industries Life, I was associated with a group of people that I personally thought an awful lot of—people you could trust what they had to say; and he, and Bill Blackburn, and a number of the other people in the managers' position in the company, were always persons that you could ask, or if you wanted something, you could go talk to them, and I like to be with those people,

and when I knew that Harold (Riley) was leaving, then I didn't desire to be associated with the company any longer."

It was stipulated that nineteen other former agents of appellee would, if called, testify similarly.

Mr. Blackburn: Born 1923. Resides in Houston. Education, Stephen F. Austin High School, Houston, Schreiner Junior College, Rice University, Loyola University, Southwestern Louisiana Institute. He was a Captain in the United States Marine Corps., a professional football player, was for four years self employed in the food business. Since 1956 he has been in the life insurance business. He has these self explanatory affiliations:

"Life Associates—Investment Club —member of investment committee

"Football United National-Charter Director-Nonprofit corp.—Youth activities Riverside Methodist Church-Steward-Director-Finance Committee-Teacher Park Place Masonic Lodge, No. 1172 A. F. & A. M.—member

" 'R' Association-Rice University-member

"Owl Club-Rice University-President-Five Years and at present

"Fellowship of Christian Athletes, Inc. Houston Chapter—President

"Rice Alumni Association—Rice University-member

"Houston Turn Verein-Social Club—member"

Mr. Graham: Born 1911. Resides in Houston. Education, Providence High School, Jacksonville Baptist College. He has worked for J. C. Penney Company 28 years, finally serving as district manager. He is member of the Board of Directors of the Meyerland State Bank, Houston, and is Past President of the Rotary Club of Houston.

Mr. Martin: Born 1895. Residence Marble Falls, Texas. Education, Tye High School, Texas Technological College, Lubbock, 1927–39, receiving Bachelor and Master of Science degrees. He has been in public school work for 35 years and since 1952 he has been in the life insurance business. He has Rotary, Masonic Lodge, Scottish Rite and Shrine affiliations, and also served on the Education Committee of the Odessa Chamber of Commerce and as teacher of Men's Bible Class in Marble Falls.

Mr. Ferguson: Born 1907. Resides in Wharton, Texas. Education, Montgomery High School. He is director of First State Bank of Louise, Texas, a director of Gulf Coast Medical Foundation, Wharton, Texas, President of Wharton Independent School Board, Director of Houston Fat Stock Show, and is a member of various social organizations.

Mr. Howard: Born 1924. Resides in Richardson, Texas. Education, Moody High School, University of Texas, Southwestern Medical School. Dr. Howard was in the Army Air Corps and is a member of many medical societies and a member of the Episcopal Church.

Mr. Parker: Born 1910. Resides in Port Arthur, Texas. Education, Oak Grove High School, Loganport, Louisiana. He has been in the life insurance business for an unstated period. He is executive secretary, President O.C.A.W. Local 4-23, Director Port Arthur Evening Lions, Director Eagles—Arvia 228, Mayor City of Port Arthur, Past Chairman United Fund, Civil Defense Director, member executive committee, Jefferson County Democrats, Director Family Council, member River & Harbors.

Mr. Lipscomb: Born 1907. Resides in Odessa. Education, Denton High School, North Texas University, Bachelor of Science Degree. Graduate study U.S.C. and Texas Tech. Mr. Lipscomb was Superintendent of Schools in Wink, Texas, for 24

years. He was in the life insurance business 1954–1958, and was President of Texas Western Development Corporation, 1960–62. He is Chairman of the Board of Winkler County State Bank, partner H & S Clothing, Andrews, Texas, President National Planning Service, Odessa. He is a member of Masonic Lodge, 32nd degree Scottish Rite, Shriner, Suez Temple, is International Counsellor, Lions Club Past Chairman Education Committee, Chamber of Commerce, Silver Beaver member, Boy Scouts, member Finance Committee Texas Lions League for Crippled Children, and a member of the Baptist Church.

Mr. Morris: Born 1910. Resides in Lubbock, Education, Speer High School, Danforth School of Pharmacy, Fort Worth, degree in pharmacy. Was for 25 years self employed pharmacist in Wink and Monahans. He has been in the life insurance business for six years. Member Board of Directors of Trans-Western Developers and Trans-Western Associates, Lubbock. Past President Lions Club, Lubbock. City Commissioner, Wink, Board member Chamber of Commerce, Board Member Winkler County Hospital, 10 years Board Member Wink Independent School District, Director Winkler County State Bank, member Board of Deacons, Finance Committee, Missions Committee, First Baptist Church, Lubbock.

Mr. Shahan: Born 1915. Resides in Brackettville, Texas. Education, Whitehouse High School, Baylor University, B. A. Degree. Mr. Shahan is President of Shaker Feed & Lumber Co., Alamo Village Inc., and owner of Shahan Angus Ranch, Brackettville. He is Past President of the Kinney County Chamber of Commerce, Director of South Texas Chamber of Commerce, Vice President of Texas-Mexico Holiday Council, Past President of Baylor B Association, Past President of the Texas Angus Association, Past President of the Texas Feed Manufacturing Association, Past Mayor of Brackettville, present member of Brackettville School Board.

There is a total of at least 31 years of insurance experience represented by these directors of the corporation. In my opinion, it would be most difficult to find a better cross section of representative, reputable, successful Texas business men than this directorate reflects. They are outstanding men. Mostly, they are shown to be public spirited, civic minded men dedicated to the welfare of their communities and their fellow men. If a group of this character does not qualify so as to assure the probable success of this corporation, there would be few corporations formed.

Each of these directors does not have insurance experience. If this is the requirement of the statute, then the board does not qualify. It is my opinion that the statute contemplates an aggregate sufficiency of insurance experience from the board as a whole.

There is a lack of evidence here, in my opinion, tending to support appellee's contention that these directors (directorate) do not have sufficient insurance experience, ability and standing to render success of this company probable. If appellee was reasonably sure of its contention in this respect, I doubt that it would expend the time and money required to bring and prosecute this suit.

The only remaining ground (b), is based upon the statutory requirement that the applicants for the charter "are acting in good faith." Appellee contends that they, incorporators, were not so acting here. This contention is based upon the evidence treated extensively by the majority that the incorporators had acted in bad faith towards appellee.

Conceding the factual soundness of this contention, it is my opinion that bad faith or breach of fiduciary relations between the incorporators of this corporation and appellee, while it may give rise to their civil liability to appellee for damages caused thereby, does not bring the incorporators within the ban of the statute. The statute

does not say that such incorporators must never have acted in bad faith. It only requires that they be presently acting in good faith. To what or to whom does "acting in good faith" refer? Appellee would direct the test in its direction. Appellant contends that it means only that the organization of the proposed corporation is being conducted in good faith. There is only one case to be found upon the subject. It is cited in the majority opinion and, in my judgment, it fully and soundly supports the position taken by appellant. The case is Speer, Banking Comm. v. Dossey, 177 Ky. 761, 198 S.W. 19, by the Kentucky Court of Appeals. Since the majority quotes from this case enough to indicate its applicability here, I do not further quote from it. I do suggest that it should be read in its entirety. This case, so far as I can ascertain, has never been questioned. The majority attempts to distinguish it on the ground that whereas in Kentucky the free enterprise system is untrammeled, " * * * it is not against the public policy of this State to discourage competition between insurance companies * * *." No authorities have been cited to sustain this statement. I suggest that to discourage competition is to encourage monopolies. Our Constitution and our anti-trust statutes establish a public policy exactly contrary to the public policy enunciated by the majority. See Monopolies and Combinations, 29 Tex.Jur. p. 739 et seq.[1]

Furthermore, the relief sought here would not merely discourage competition; it would strangle it.

I would dissolve the temporary injunction.

---

1. We have many laws regulating business. They are designed, however, not to discourage competition, but to prevent unfair, ruinous competition, and to protect the interest of the public.